FILED

AUG 06 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JUSTINE BRIGGS; CATHERINE CITRANO; JOHN BUCKLEY; SELESTINO LOVATO; JAMES OWENS; EDWIN PRETTER; DELORES HEDRICK; JOE LADNER; CHARLOTTE PEAK; BRUCE RININGER; ROBERT RUBUS; JENNIFER HANNAN; DORIS PARSHALL; CAROL GOODWIN; SILVANA ROSSI; SHAMBRE SKIDMORE; RUTH STUDER; WILSON THOMAS; RALPH WILOUGHBY; JAMES HOLZBAUR; JOHN CONSENTINO, | No. 15-55873<br><br>D.C. No. 3:14-cv-01677-AJB-MDD<br><br><br>OPINION |
| Plaintiffs - Appellants, | |
| v. | |
| MERCK SHARP & DOHME, | |
| Defendant - Appellee. | |

| | |
|---|---|
| NICOLETTE KREIS; MARIA FEDORCZYK; CAMILLE NETO; LINDA MAURO; NANCY BOYD; DAWN HADRY; ALEXIS JACKSON; GARY JONES; DEBRA RIFE; WILLIAM WEBER; ROBERT MORGAN; EARL BARTLETT; ROGER | No. 15-55874<br><br>D.C. No. 3:14-cv-02072-AJB-MDD |

HALL; STEVEN HATFIELD; ROBERT IKEMEIER; MARY JANE HENDRICKS; DINA KARAMBASIS; LAUREL ROYAL; ROBERT DOKMANOVICH; ROSE ANN FIORITA; MAE BROOKS; PEGGY YOUNG; CAROLYN MCDANIEL; LEROY SMITH; WILLIAM BELL; SANDE YOUNG; HERBERT HOWARD; WILLIAM LAPLANTE; PATRICIA HENE; PEGGY RICHARDSON; MARY BROWN; ELLEN ALLEN; PATRICIA ALLEN; SHIRLEY PHELPS; RICHARD MAURO; LISA VEIT,

           Plaintiffs - Appellants,

 v.

MERCK SHARP & DOHME CORP.,

           Defendant - Appellee.

---

TRACEY L. KELLY; TIMOTHY B. KELLY; CHAD KELLY; JOYCE E. BOOTH; WILLIAM BOOTH; CLETUS E. BREEDEN; TIM CAGLE; JERI BRAMBLE; MELANIE BROWN; PAM GEILHNER; KIM CARPENTER; BARBARA COLLINS; ASWELL W. COOK; DEBORAH WARNE; ELENDER MCINTIRE; RONALD F. COOK; KELLY JONES; ANDREW COOK; DORIS E. CORKERN; JESSE L. FITCH; GLENDA R. FITCH; VALORIE

No. 15-55875

D.C. No. 3:14-cv-02066-AJB-MDD

HARRELL; KIMBERLY WASSANA; JANICE INZALACO; WANDA LUCAS; GARY L. MONTGOMERY; KATHY M. MONTGOMERY; DEBRA PATRICK-GOLABEK; WALTER GOLABEK; JODY PRATER-VINCENT; LEE PRATER; BILLY JOSEPH PRATER; BETTYE J. ROBERTSON; HAROLD RODGERS, Jr.; ALMA HEWITT; CORNELL STEWART; FLORETHA STEWART; EDWIN J. STRYSKO; RUBY STRYSKO; MARIANNE MABRY; DONNA LYNN DUDA; BRENDA THOMASON; JACKIE HAMMOND; CYNTHIA TOMLIN; REID F. WAFFLE; ROSE M. WAFFLE; JULIUS WHITTINGTON; MARY WHITTINGTON; JANET M. WOOD,

Plaintiffs - Appellants,

v.

MERCK SHARP & DOHME, Corp.,

Defendant - Appellee.

---

LOUIS JOHNSON; RUTH SUYAMA-KIM; AILEEN SEGERSTROM; ALFRED HUSK; EDITH MAGNABIGON; NANCY MORGAN; JANE SUGRUE; DONNA LAURICELLA; JUDILYN KNIGHT; HARRY SCHWEINSBERG; JOANN CORTESE; BRENDA COOPER; DEAN JOHNSON; MARY FISHE;

No. 15-55876

D.C. No. 3:14-cv-02070-AJB-MDD

-3-

REXFORD WHEELER; JOSEPHINE
BASTONE; MARIE ANSELME;
SHERMAN ROBINSON; SYLVESTER
ALLISON; TODD LEONARD;
LORRAINE SQUILLANTE; LOIS
YOUNG; TRACY JOHNSON; ROSS
MACPHERSON; JULIE WILLIAMS;
NOOR SHAIKH; MARISA SIFONTES;
JOSEPH SABIA; PATRICIA TURNER;
DEBORAH WELLS; ALBERT
GUTIERREZ; AUDREY MOORE,

    Plaintiffs - Appellants,

 v.

MERCK SHARP & DOHME, Corp.,

    Defendant - Appellee.

---

RODOLFO L. MARTINEZ; ANTONIO
MARTINEZ; ABRAM S. MILLER, Jr.;
DANNY LENZI; DANIEL ALLOWAY;
JODI ALLOWAY; BRUCE
BRADSHAW; FRANK S. BRADSHAW;
BRIAN J. BRADSHAW; CAROL L.
BROWN; SOPHIE L. CODY; ANGELA
CASTOR; TABORI DEBRAUX;
LEOPOLDO C. BAUSAS; FE B.
ENCINA; ROSEWELL B. ENCINA;
ANITA FINEMAN; BETTY J. HOBBS;
NORMA KORDICK; DAWN KORDICK;
TIMOTHY KORDICK; ELIZABETH B.
LAWRENECE; WILLIAM D.
LAWRENECE; KATHRYN L. COWAN;

No. 15-55877

D.C. No. 3:14-cv-02071-AJB-
MDD

-4-

CAROL M. LAWRENECE; PATRICIA MAHONEY; MAURINE P. BINGHAM; MICHAEL D. MAHONEY; RICHARD W. MAHONEY; KATHLEEN NEWBOLD; KEVIN J. MAHONEY; MARGARET A. HALE; ELIZABETH K. OLSON; DEBORAH C. MAHONEY; JAMES R.T. MARTIN; ANTHONY MINERO; CAMIELLE MINERO; DAVID R. MOTON, Sr.; CAROL RUP; CHRISTOPHER RUP; MARK RUP; TRACY EMMERT; LOUIS SALCIDO; MILISSA A. FAY; SYLVIA L. SMITH; MARK A. SALCIDO; DEIDRE L. SALCIDO; SIDNEY L. SALCIDO; STEPHEN A. SALCIDO; LOUIS M. SALCIDO; BRIDGETTE L. SMITH; PATRICIA L. SANDERS; LISA K. CARLSON; LAURIE A. BOOTH; DANIEL STARK; MARY J. WARD; FELICIA WASHINGTON; MARVOLENE OLIVER; ANNIE WADE; CHARLENE WASILEWSKI; NATALIE GEIGLE; ALEXIA KRANE; BRENDA COX,

               Plaintiffs - Appellants,

 v.

MERCK SHARP & DOHME, Corp.; MERCK SHARP & DOHME, Ltd.,

               Defendants - Appellees.

Appeal from the United States District Court

for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted July 10, 2015
Pasadena, California

Before: W. FLETCHER, PAEZ, and BERZON, Circuit Judges.

Opinion by Judge William A. Fletcher

W. FLETCHER, Circuit Judge:

The Class Action Fairness Act ("CAFA"), Pub. L. No. 109–2, 119 Stat. 4 (2005), authorizes the removal to federal court of "mass actions." 28 U.S.C. § 1332(d)(11)(A), (B). "Mass actions" are civil actions in which "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." *Id*. § 1332(d)(11)(B)(i). The statute excludes from the "mass action" definition actions in which "the claims are joined upon motion of a defendant," *id*. § 1332(d)(11)(B)(ii)(II), or in which "the claims have been consolidated or coordinated solely for pretrial proceedings," *id*. § 1332(d)(11)(B)(ii)(IV).

Plaintiffs-Appellants ("plaintiffs") in this consolidated appeal filed five separate tort cases in a California state court, each with fewer than one hundred plaintiffs. Plaintiffs alleged that they, or the deceased individuals they represent, suffered from pancreatic cancer due to their use of incretin-based therapies for

-6-

diabetes, including those developed by Defendant-Appellee Merck Sharp & Dohme Corporation ("Merck"), and other defendant drug companies. At the time plaintiffs filed suit, a coordinated proceeding covering similar claims was pending in a California state court in a different county. Merck removed four of the five cases based on conventional federal diversity jurisdiction, but the district court granted plaintiffs' motions to remand. Merck then removed all five cases based on CAFA, contending that plaintiffs' statements to the court during the earlier remand proceedings converted four of the five cases into a mass action, and that the filing of the fifth case in the same state court as the other four had the same consequence. Plaintiffs moved to remand the five cases. The district court denied the motions for remand and subsequent motions for reconsideration.

This appeal presents two questions. First, were plaintiffs' petitions for permission to appeal timely? The answer depends on whether a timely motion for reconsideration of an order denying or granting a motion for remand under 28 U.S.C. § 1453(c)(1) restarts the ten-day period during which a party may file a petition for permission to appeal. We hold that it does.

Second, do these five cases, or any of them, constitute a mass action under CAFA? When plaintiffs filed the five cases, a coordinated proceeding involving similar issues and overlapping defendants was already underway in state court.

Plaintiffs in four of the five cases made statements in the first federal court remand proceeding indicating that they anticipated that their cases would be joined to the existing coordinated state proceeding after remand. Some of the defendants in the cases now before us were (and are) defendants in the coordinated state proceeding; indeed, defendants initiated that proceeding. Plaintiffs in one of the five cases had petitioned unsuccessfully in state court to join the coordinated state proceeding. Despite these actions by plaintiffs, we hold that in none of the five cases did plaintiffs propose that the claims of one hundred or more persons be tried jointly.

We therefore reverse and remand with instructions to grant plaintiffs' motions to remand to state court.

## I. Background

### A. Three Sets of Cases

Five distinct groups of plaintiffs filed suit in Superior Court for the County of San Diego during the spring and summer of 2014. The five cases are *Kreis*, *Kelly*, *Johnson*, *Briggs*, and *Martinez*. The complaints alleged various tort claims against manufacturers and a distributor of incretin-based drugs, including Byetta, which is manufactured and promoted by Eli Lilly and Company and Amylin Pharmaceuticals, and Januvia and Janumet, which were developed by Merck. Plaintiffs in *Kreis*, *Johnson*, and *Briggs* have common counsel. Plaintiffs in *Kelly*

and *Martinez* have different common counsel.  Each of the five cases has fewer than one hundred plaintiffs.

When plaintiffs filed their five complaints in Superior Court in San Diego, a second set of cases involving incretin-based drugs was already pending in the Superior Court for the County of Los Angeles as a coordinated state proceeding under California Code of Civil Procedure section 404.  Section 404 provides:

> Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied.

Cal. Civ. Proc. Code § 404.1.

Eli Lilly and Amylin Pharmaceuticals initiated the state court coordinated proceeding in 2009 for the purpose of litigating claims that the drug Byetta causes pancreatitis.  Judge Highberger of the Los Angeles Superior Court presides over the coordinated proceeding.  We refer to the coordinated proceeding as the Byetta Judicial Council Coordinated Proceeding ("Byetta JCCP").

The Byetta JCCP has been expanded to cover claims dealing with other incretin-based drugs, other injuries (including pancreatic cancer), and other drug companies (including Merck). An August 30, 2010 case management order, which expressly applies to later-filed add-on cases, states that the order "does not constitute a determination that these actions should be consolidated for trial." In a June 17, 2014 status conference report, the Byetta JCCP plaintiffs stated that they "have said several times that a small group of bellwethers provide an extremely useful and practical backdrop and context for the many issues that will arise as the [cancer] cases progress, including the generic causation phase."

The *Kreis* plaintiffs conceded in their brief and at oral argument before us that they petitioned to join the Byetta JCCP in May 2014. The *Kreis* plaintiffs filed their add-on petition in state court one day after Merck removed the case to federal court for the first time. The *Kreis* plaintiffs' add-on petition states that "[c]oordinated proceedings will promote the ends of justice by efficiently utilizing this State's judicial resources, avoiding inconsistent rulings and promoting economy and efficiency for all parties, witnesses and counsel." In a declaration attached to the petition, counsel for the *Kreis* plaintiffs stated that "[p]etitioners do not seek joint trials of any cases or plaintiffs, but rather, all claims shall be tried individually."

Throughout most of this litigation, Merck has asserted that the *Johnson* plaintiffs also petitioned to join the Byetta JCCP. However, in a letter to this court sent just before oral argument, and again in oral argument, Merck acknowledged that the add-on petition in *Johnson* had also been filed by a defendant rather than by plaintiffs. (Merck further acknowledged at oral argument, contrary to its earlier assertions, that a second add-on petition in *Kreis* had been filed by a defendant rather than plaintiffs.) After the state court received the two add-on petitions filed by the defendants in *Kreis* and *Johnson*, it notified the parties that because the cases had been removed to federal court it could not process them. We infer that the state court sent the *Kreis* plaintiffs a similar notice in response to their add-on petition, though we do not have access to the state court record that would confirm that the state court did so.

When plaintiffs filed their five complaints, a third set of incretin-related cases was pending as multi-district litigation ("MDL") in the United States District Court for the Southern District of California, sitting in San Diego. District Judge Battaglia presides over the MDL. *See In re Incretin Mimetics Prods. Liab. Litig.*, No. 3:13-md-02452-AJB-MDD (C.D. Cal.) ("MDL"). When plaintiffs' five cases were removed to federal court from San Diego Superior Court, they were assigned to Judge Battaglia as related cases. Judge Battaglia in the MDL and Judge

-11-

Highberger in the Byetta JCCP have worked closely to coordinate their respective proceedings.

## B. Removal Proceedings

On April 30 and May 1, 2014, Merck filed notices of removal in *Kelly*, *Kreis*, and *Johnson* based on an assertion of diversity jurisdiction under 28 U.S.C. § 1332. (The *Martinez* and *Briggs* complaints had not yet been filed.) Plaintiffs moved to remand the three cases to state court based on a lack of complete diversity. Merck moved to sever the claims of three non-diverse plaintiffs and to dismiss as fraudulently joined, or to sever, claims against one of the defendants in an attempt to create complete diversity.

At the hearing on plaintiffs' remand motions, held on August 7, 2014, Judge Battaglia asked, "[I]f remanded, are these cases going to end up, through the JCCP, with Judge Highberger, or are they going to end up with some other judge for management purposes, or do we know?" Counsel for the *Kelly* plaintiffs answered on behalf of the plaintiffs in all three cases, "They will be transferred to Judge Highberger and be assigned to him for all purposes and be coordinated with this court as we have been doing with all of the other cases that are in the JCCP." Judge Battaglia then asked what the benefit would be of keeping the cases in state court, "if ultimately they are going to be coordinated in part following the same

-12-

part of the process of the MDL?" Counsel for *Kreis* responded that given the large number of incretin-related cases pending in federal court and plaintiffs' desire to resolve the cases before plaintiffs and their successors-in-interest died, they preferred to proceed before Judge Highberger because he has a smaller docket and was likely to process the cases more quickly. Speaking generally of the many ongoing incretin-related cases, counsel for *Kelly* remarked, "Some plaintiffs would prefer to be in state court, to get their trials in the JCCP. Others will be in federal court and with different federal judges around the country." In opposing the remand, Merck argued that the Byetta JCCP was the wrong forum for these cases, since that proceeding primarily involved different drugs and injuries than those at issue in *Kelly*, *Kreis*, and *Johnson*.

On August 8, 2014, the district court denied Merck's motion to sever and to dismiss the non-diverse parties, and granted plaintiffs' motions to remand. The court observed in its remand order that "given that these cases would join the current actions pending in California state court as part of the JCCP action and the fact that this Court has been in coordination with the Los Angeles state court, the risk of inconsistent rulings is unpersuasive at this point." After the remand to state court, defendant Eli Lilly petitioned unsuccessfully to add *Kreis*, *Kelly*, and *Johnson* to the Byetta JCCP.

On July 16, 2014, Merck filed a notice of removal in *Briggs*, also based on §

1332. On August 15, 2015, the *Briggs* plaintiffs filed a motion to remand based on

lack of complete diversity. In their supporting memorandum, they cited the district

court's remand in *Kelly* just a few days before. They wrote in a footnote,

"[R]emand will result in these cases joining the Judicial Council Coordinated

Proceeding (JCCP), In re Byetta Cases, JCCP No. 4573, in Los Angeles, where

coordination with this Court's MDL is underway." The language in the footnote

replicates the language in the district court's August 8 remand order.

On September 2, 2014, while the *Briggs* plaintiffs' motion for remand was

still pending in the district court, Merck filed second notices of removal in *Kreis*,

*Kelly*, and *Johnson*, filed an amended notice of removal in *Briggs*, and filed a first

notice of removal in *Martinez*. Merck now asserted CAFA jurisdiction as the basis

for removal. Merck contended that "*Briggs*, *Johnson*, *Kelly*, *Kreis*, and *Martinez*

are removable under the 'mass action' provision because plaintiffs' counsel's

expressed intent that the cases be transferred to the JCCP constitutes a proposal to

try the claims of those plaintiffs jointly."

Plaintiffs moved to remand all five cases to state court. The district judge

stayed proceedings pending our rehearing en banc of *Corber v. Xanodyne

Pharmaceuticals, Inc.*, 771 F.3d 1218 (9th Cir. 2014) (en banc). The question in

-14-

*Corber* was whether plaintiffs' petition in several cases in state court to initiate a coordinated proceeding under California Code of Civil Procedure section 404 "for all purposes" was a proposal for a joint trial within the meaning of CAFA. We held that it was. *Id*. at 1220.

On December 23, 2014, after we decided *Corber*, the district judge denied plaintiffs' motions to remand in all five cases. Ten days later, on January 2, 2015, plaintiffs moved for reconsideration. The district judge denied the motions on January 9, 2015. In his order, he wrote that he had denied remand in *Kelly*, *Kreis*, and *Johnson* based on those plaintiffs' representations in the August 7 hearing; had denied remand in *Briggs* based on the those plaintiffs' footnote in their August 15 memorandum; and had denied remand in *Martinez* because "by filing the case in San Diego Superior Court, along with the four other actions, Plaintiffs implicitly proposed the claims in *Martinez* be joined with the claims of plaintiffs in the four other cases." The district judge had mentioned in his initial order the add-on petitions he believed had been filed by the *Kreis* and *Johnson* plaintiffs, but he explained in denying the motion for reconsideration that he "did not find these petitions dispositive."

## C. Appeal

On January 20, 2015—ten days after the district judge denied plaintiffs' motions for reconsideration—plaintiffs filed petitions for permission to appeal, seeking review of the orders denying their motions for remand and reconsideration. Merck contends that we lack jurisdiction because plaintiffs did not file their petitions within ten days of the district court's initial orders denying remand. A motions panel of this court consolidated the five cases, conditionally granted the plaintiffs permission to appeal, and directed the parties to brief whether plaintiffs' petitions for permission to appeal were timely filed pursuant to 28 U.S.C. § 1453(c)(1).

## II. Appellate Jurisdiction

An appeal in a CAFA case may be sought "from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order." 28 U.S.C. § 1453(c)(1); *see* 28 U.S.C. § 1332(d)(11)(A) (explaining that for purposes of § 1332(d) and § 1453, "a mass action shall be deemed a class action under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs"). Merck contends that the word "order" in § 1453(c)(1) refers only to a district court's initial remand order. Merck therefore contends that we must deny permission to appeal on the ground

-16-

that plaintiffs sought permission to appeal within ten days of the district judge's orders denying reconsideration rather than within ten days of his order denying the motions to remand. We disagree with Merck's reading of the word "order." We hold that the time to seek permission to file an appeal runs from the later of either the date of an initial order granting or denying remand, or the date of an order granting or denying reconsideration, provided the motion for reconsideration was timely filed.

It has long been accepted that the time period to file an appeal generally runs from the denial of a timely motion for reconsideration, rather than from the date of the initial order. *See United States v. Ibarra*, 502 U.S. 1 (1991) (per curiam); *United States v. Dieter*, 429 U.S. 6 (1976) (per curiam); *United States v. Healy*, 376 U.S. 75 (1964). We see no good reason to depart from this "well-established rule" and the "traditional and virtually unquestioned practice" of applying it. *Healy*, 376 U.S. at 78, 79.

Merck contends that we should not apply the general rule of *Ibarra*, *Dieter*, and *Healy* on the ground that § 1453(c)(1)'s deadline is statutory, jurisdictional, and specific. We have three responses. First, it does not matter that the deadline is statutory. The deadline in *Dieter* was statutory. The Supreme Court held in that case that the denial of a timely petition for rehearing marked the start of the period

-17-

during which to take an appeal. *Dieter*, 429 U.S. at 8–9. Second, it does not matter if the timeliness requirement of § 1453(c)(1) is jurisdictional (assuming *arguendo* that it is). Federal Rule of Appellate Procedure 4(a) is jurisdictional, *see United States v. Sadler*, 480 F.3d 932, 936–37 (9th Cir. 2007), and it has long been held that reconsideration orders mark the start of the time to appeal under that rule. *See Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 267 (1978). Further, even if the timeliness requirement is jurisdictional (which we do not decide), and even if we therefore lack the authority to find an equitable exception to the requirement, Merck misapprehends the question before us. We are determining what that rule means; we are not addressing any exceptions to the rule. Third, § 1453(c)(1) may be specific in some respects, but both § 1453(c)(1) and Federal Rule of Appellate Procedure 5, which governs appeals under § 1453(c)(1), *see Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.*, 435 F.3d 1140, 1145 (9th Cir. 2006), do not specify the effect of a timely motion for reconsideration. As to that issue, they are silent. It would be odd to interpret Congress's silence as signifying an intent to deviate from a well-established default rule.

Merck further contends that our holding would defeat the purpose of § 1453(c)(1) and other provisions of CAFA that provide for quick review of remand orders. We disagree. Courts of appeals are better able to resolve appeals quickly

(and correctly) when district courts have clarified the bases for their decisions or corrected any mistakes they may have made in their initial orders. *See Dieter*, 429 U.S. at 8 ("The fact that appeals are now routed to the courts of appeals does not affect the wisdom of giving district courts the opportunity promptly to correct their own alleged errors, and we must likewise be wary of imposing added and unnecessary burdens on the courts of appeals."). This appeal is proof of that proposition. The district court's order denying reconsideration specified why, in its view, each of the five cases fell under CAFA's mass action provision. Even though we disagree with the district judge's conclusion, we recognize and are grateful for the assistance his careful reconsideration order has provided.

Finally, we note that our holding is consistent with the rule applied in other circuits. *See, e.g.*, *Natale v. Gen. Motors Corp.*, No. 06-8011, 2006 WL 1458585, at *1 (7th Cir. May 8, 2006) (holding that appellate jurisdiction lies under § 1453(c)(1) when a party timely seeks review of an order denying reconsideration of a remand order); *see also McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 222 n.8 (3d Cir. 2012) (holding that the ten-day period for filing a petition seeking to appeal "an order granting or denying class-action certification" under Rule 23(f) does not start to run until the district judge rules on a timely motion for reconsideration); *Gelder v. Coxcom Inc.*, 696 F.3d 966, 969 (10th Cir. 2012)

(same); *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064–65 (11th Cir. 2001) (same); *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 837 (7th Cir. 1999) (same).

### III.  Standard of Review

We review de novo the district court's order denying remand to state court. *Corber*, 771 F.3d at 1222.  Whether plaintiffs proposed a joint trial is a question that concerns the "'construction, interpretation, or applicability of CAFA,'" which we review de novo.  *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 867 (9th Cir. 2013) (quoting *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012)).

### IV.  CAFA Removal Jurisdiction

CAFA extends removal jurisdiction to civil actions in which the "monetary relief claims of 100 or more persons are proposed to be tried jointly," 28 U.S.C. § 1332(d)(11)(B)(i), except, as potentially relevant here, when "the claims are joined upon motion of a defendant," *id*. § 1332(d)(11)(B)(ii)(II), or when "the claims have been consolidated or coordinated solely for pretrial proceedings," *id*. 1332(d)(11)(B)(ii)(IV).  We must decide whether plaintiffs in any of these five consolidated cases ever proposed to try jointly the claims of one hundred or more persons.  *See Corber*, 771 F.3d at 1223 (noting that the "proposal to try claims jointly must come from the plaintiffs, not from the defendants").  Our answer

-20-

turns, first, on what it means to make a proposal, and second, on what it means to propose a joint trial.

## A. Proposal

At the outset, we observe that because § 1332(d)(11)(B)(i) speaks in the passive voice, it is not clear on the face of that subsection, considered alone, who must make a proposal that would trigger CAFA's mass action removal provision. However, when § 1332(d)(11)(B)(i) is read in conjunction with the exception contained in § 1332(d)(11)(B)(ii)(II), it is clear that a "proposal" within the meaning of § 1332(d)(11)(B)(i) cannot come from a defendant. It is possible that a proposal by a state court for a joint trial would qualify as a "proposal" under § 1332(d)(11)(B)(i). But we need not reach that question, for at no point did the state court move *sua sponte* to add any of these five cases to the Byetta JCCP. In the cases now before us, the issue is whether plaintiffs made a "proposal" for joint trial sufficient to trigger CAFA's removal jurisdiction.

The district judge identified two actions by plaintiffs that, in his view, constituted implicit proposals for a joint trial. First, in his view, plaintiffs in four of the five cases—*Kelly*, *Kreis*, *Johnson*, and *Briggs*—had represented to him in the first round of remand proceedings that they intended for their cases to be joined for trial in the Byetta JCCP. Second, plaintiffs in *Martinez* (along with plaintiffs in

-21-

the other four cases) filed suit in San Diego Superior Court after defendants initiated the Byetta JCCP in the Los Angeles Superior Court, a court in a neighboring judicial district. We agree with the district judge that implicit proposals may trigger CAFA's removal jurisdiction. *See Corber*, 771 F.3d at 1225. But we hold that neither of these actions was an implicit proposal.

A proposal for purposes of CAFA's mass action jurisdiction, even an implicit proposal, is a "voluntary and affirmative act," *id.* at 1224, and an "intentional act," *Parson v. Johnson & Johnson*, 749 F.3d 879, 888 (10th Cir. 2014). It is "not a mere suggestion," *Scimone v. Carnival Corp.*, 720 F.3d 876, 883 (11th Cir. 2013), and it is not a mere prediction.

Further, and more important, we agree with the Seventh Circuit that, to qualify as a proposal under § 1332(d)(11)(B)(i), a request for a joint trial "must be made to a court that can effect the proposed relief." *In re Abbott Labs., Inc.*, 698 F.3d 568, 573 (7th Cir. 2012); *see Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011) (stating that the "proposal must be to the court in which the suits are pending"); *see also Corber*, 771 F.3d at 1222 ("The statutory issue for us is whether the petitions filed in this case, seeking coordination of the California propoxyphene actions, *were in legal effect* proposals for those actions to be tried jointly." (emphasis added)). This interpretation is consistent with the ordinary

-22-

meaning of the word "propose." *See Webster's Third New International Dictionary* 1819 (2002) ("[T]o propose" means "to offer for consideration, discussion, acceptance, or adoption."); *see Scimone*, 720 F.3d at 881 (relying on the *Webster's* definition). A plaintiff's proposal need not take the form of a formal motion for a joint trial. *Cf. Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 954 (9th Cir. 2009) (noting that a defendant's request to consolidate plaintiffs' actions falls under § 1332(d)(11)(B)(ii)(II)'s exception even if it is not a formal motion). But if a court lacks the authority to grant a request for a joint trial, then plaintiffs cannot "propose" a joint trial by making a request to that court.

From our understanding of the meaning of "proposal," it follows that nothing the *Kreis*, *Kelly*, *Johnson*, and *Briggs* plaintiffs represented to the federal district court about what would or might happen to their cases, if they were remanded to state court, qualified as a proposal for a joint trial. (The *Martinez* plaintiffs did not make any such representation.) At most, the remark made by counsel for *Kreis* at the hearing to remand the *Kreis*, *Kelly*, and *Johnson* cases was a request to remand those three cases to state court, with the prospect of consolidation with the Byetta JCCP as one reason supporting remand. The statement in a footnote in the *Briggs* memorandum in support of remand was not even that, for instead of providing a reason for remand, the footnote merely

-23-

predicted what would happen in the event of a remand. But even if the statement by counsel on behalf of the *Kreis*, *Kelly*, and *Johnson* plaintiffs and the footnote in the *Briggs* memorandum could be characterized as providing reasons for remand and expressing an intent to seek to join the Byetta JCCP, these statements could not have been "proposals," given that the district court lacked any authority to join plaintiffs' cases to the Byetta JCCP. Only California's Judicial Council and Judge Highberger had the authority to do so. *See Corber*, 771 F.3d at 1221 n.2 (citing Cal. Civ. Proc. Code §§ 404.1–.9 and *Abelson v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 35 Cal. Rptr. 2d 13, 18 (Ct. App. 1994)).

It also follows from our understanding of "proposal" that plaintiffs in none of the five cases (including *Martinez*) proposed a joint trial merely by filing their cases in the California state court system, when a consolidated proceeding covering similar claims, initiated by defendants, was underway in a California court. It would strain common sense and stretch the language of § 1332(d)(11)(B)(i) to conclude that plaintiffs were implicitly proposing to join their cases to the Byetta JCCP when they did no more than to file their cases in San Diego Superior Court while the defendant-initiated Byetta JCCP was pending in Los Angeles Superior Court. At most, we can say that plaintiffs filed their complaints with the knowledge that there was a strong likelihood that their cases would be joined in the

-24-

Byetta JCCP. This likelihood alone cannot to trigger CAFA's mass action jurisdiction, for some entity—either one of the parties or the state court—would have to take some action to effectuate the joinder. *See Anderson v. Bayer Corp.*, 610 F.3d 390, 394 (7th Cir. 2010) (noting that a proposal for some form of joint trial "seems possible (perhaps even likely) at some future point in these cases, given the similarity of their claims. But it is not yet a certainty, and Congress has forbidden us from finding jurisdiction based on [the defendant's] suggestion that the claims be tried together"); *see also Corber*, 771 F.3d at 1224 n.5 ("[W]e must determine whether Plaintiffs *proposed* a joint trial, not whether one will occur at some future date."). The statute tells us that it matters who or what that entity is. It makes clear that if it were a defendant who petitioned to add the cases to the Byetta JCCP, the cases would not constitute a mass action. 28 U.S.C. § 1332(d)(11)(B)(ii)(II) ("[T]he term 'mass action' shall not include any civil action in which . . . the claims are joined upon motion of a defendant.").

If we were to agree with the district court that plaintiffs proposed a joint trial merely by filing their actions in state court, we would transform plaintiffs from masters of their complaints into servants of defendants' litigation strategy. In effect, we would permit defendants to lock later-filing plaintiffs out of state court systems by preemptively initiating coordinated judicial proceedings in earlier-filed

state court suits. Neither the text nor the purpose of CAFA contemplates such a result. "[T]here is no indication that Congress's purpose in enacting CAFA was to strip plaintiffs of their ordinary role as masters of their complaint and allow defendants to treat separately filed actions as one action regardless of plaintiffs' choice." *Scimone*, 720 F.3d at 885; *see Tanoh*, 561 F.3d at 953 ("In this case, concluding that plaintiffs' claims fall outside CAFA's removal provisions is not absurd, but rather is consistent with . . . the well-established rule that plaintiffs, as masters of their complaint, may choose their forum by selecting state over federal court . . . .").

The actions of plaintiffs in these cases—filing separate suits in San Diego Superior Court when a similar, but not identical, set of cases was pending in a JCCP in Los Angeles Superior Court—are a far cry from what other circuits have held sufficient to trigger removal as a mass action under CAFA. *See, e.g.*, *Atwell v. Bos. Sci. Corp.*, 740 F.3d 1160, 1161, 1163 (8th Cir. 2013) (explaining that CAFA jurisdiction lies where plaintiffs requested that their cases, which together included more than one hundred plaintiffs, be assigned "to a single Judge for purposes of discovery and trial"); *Visendi*, 733 F.3d at 868 (holding that CAFA jurisdiction lies where plaintiffs "filed a single state-court complaint that named well over 100 plaintiffs"); *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 761–62 (7th

Cir. 2008) (recognizing that CAFA jurisdiction lies where plaintiffs filed a complaint on behalf of 144 plaintiffs); *see also Scimone*, 720 F.3d at 884 ("Every other court of appeals confronted with this question has come to the same conclusion: that plaintiffs have the ability to avoid § 1332(d)(11)(B)(i) jurisdiction by filing separate complaints naming less than 100 plaintiffs and by not moving for or otherwise proposing joint trial in the state court.").

We therefore conclude that none of the plaintiffs "proposed" a joint proceeding within the meaning of § 1332(d)(11)(B)(I), either when they made representations to the federal court or when they filed suit in state court.

## B. Joint Trial

Because we do not agree with the district court's conclusion that plaintiffs' representations in federal court and their decision to file their cases in California state court constituted implicit proposals to try jointly the claims of one hundred or more persons, we reach a question the district court had no need to answer: Did the plaintiffs in *Kreis* trigger CAFA's mass action jurisdiction by filing a petition in state court to join the Byetta JCCP?

While *Corber* held that an initial petition for a JCCP can constitute a proposal, it is not clear whether an add-on petition can constitute a proposal as well—particularly where, as here, the claims in the add-on petition would not meet

CAFA's hundred-person threshold unless added to claims that had previously been joined "upon motion of a defendant." 28 U.S.C. § 1332(d)(11)(B)(ii)(II). We need not reach that issue, however, for even if the *Kreis* plaintiffs' add-on petition could be construed as a proposal, it was not a proposal *for a joint trial. See Corber*, 771 F.3d at 1224 (observing that not all JCCP petitions are "*per se* proposals to try cases jointly"). Their add-on petition comes within the scope of the exception in § 1332(d)(11)(B)(ii)(IV), which excepts from the "mass action" definition "claims that have been consolidated or coordinated solely for pretrial purposes."

We wrote in *Corber*, "We can envision a [JCCP] petition that expressly seeks to limit its request for coordination to pre-trial matters, and thereby align with the mass action provision's exception [under] § 1332(d)(11)(B)(ii)(IV)." *Id*. We went on to observe that "if Plaintiffs had qualified their coordination request by saying that it was intended to be solely for pre-trial purposes, then it would be difficult to suggest that Plaintiffs had proposed a joint trial." *Id*. The *Kreis* plaintiffs qualified their petition in just this manner. In a declaration attached to the *Kreis* add-on petition, plaintiffs' counsel stated that plaintiffs "do not seek joint trials of any cases or plaintiffs, but rather, all claims shall be tried individually." Unlike the *Corber* plaintiffs, the *Kreis* plaintiffs did not explain that they sought to join the JCCP in order to avoid "inconsistent judgments." *Id*. at 1223–24. Rather,

they stated that they wanted to avoid "inconsistent rulings." "Rulings" is a broader term than "judgments," including various dispositions of pre-trial motions.

Our conclusion that the *Kreis* plaintiffs did not seek a joint trial is confirmed by the nature of the proceeding they sought to join. The August 2010 case management order in the Byetta JCCP, which explicitly applies to later filed add-on cases, states that the order "does not constitute a determination that these actions should be consolidated for trial." We recognize that the Byetta plaintiffs submitted a status conference report in June 2014—after the plaintiffs in four of the five cases, including *Kreis*, had filed suit—in which the Byetta plaintiffs represented that they "have said several times that a small group of bellwethers provide an extremely useful and practical backdrop and context for the many issues that will arise as the [pancreatic cancer] cases progress, including the generic causation phase." A bellwether trial is a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky questions of causation or liability. *See* Alexandra D. Lahav, *Bellwether Trials*, 76 Geo. Wash. L. Rev. 576, 577–78 (2008). Ordinary principles of collateral estoppel may apply in subsequent cases, but we agree with Judge Battaglia that a bellwether trial is not, without more, a joint trial within the meaning of CAFA. *Compare Atwell*, 740 F.3d at 1163–66

(affirming the denial of motions to remand where three sets of plaintiffs filed motions proposing that the state court assign all three cases "to a single Judge for purposes of discovery and trial," and where plaintiffs' counsel discussed bellwether case selection at a hearing in state court); *Abbott Labs.*, 698 F.3d at 571, 573 (reversing an order granting a motion to remand where plaintiffs moved for consolidation "through trial" and "not solely for pretrial proceedings," in part to "prevent inconsistent . . . trial rulings"); *Bullard*, 535 F.3d at 762 (stating that "[a] trial of 10 exemplary plaintiffs, *followed by application of issue or claim preclusion to 134 more plaintiffs without another trial*, is one in which the claims of 100 or more persons are being tried jointly," in the course of holding that a single complaint identifying 144 plaintiffs constitutes a proposal for a joint trial (emphasis added)).  Thus, even if we were to impute the Byetta plaintiffs' expressed wish for bellwether trials to the *Kreis* plaintiffs, that would not transform the *Kreis* plaintiffs' add-on petition into a proposal for a joint trial.

Conclusion

Because plaintiffs in none of these five cases proposed to try jointly the claims of one hundred or more persons, we reverse and remand to the district court with directions to remand the five cases to state court.

**REVERSED and REMANDED.**

-30-

COUNSEL LISTING

Louis M. Brograd (argued), Center for Constitutional Litigation, P.C., Washington, D.C.
John M. Restaino, Jr., Denver, CO
Ryan L. Thompson (argued), Watts Guerra LLP, San Antonio, TX
 for Plaintiffs-Appellants

Maurita Elaine Horn, Douglas R. Marvin, Kristin Ann Shapiro (argued), Williams & Connolly LLP, Washington, D.C.
Vickie Turner, Wilson Turner Kosmo LLP, San Diego, CA
 for Defendant-Appellee