**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JERRY DUNSON; CHERYL GRECH; ROBERT FLANAGAN; CAROL FLANAGAN; JOSEPH GIEBER; MARY ELDEB; DAYNA CURRIE; HARLOWE CURRIE; CHARLES HENRY LEWIS, <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> CORDIS CORPORATION, <br><br> Defendant-Appellant. | No.   17-15257 <br><br> D.C. No. 3:16-cv-03076-EMC <br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted March 13, 2017
San Francisco, California

Before: FERNANDEZ and WATFORD, Circuit Judges, and STATON,[*] District Judge.

Opinion by Judge WATFORD, Circuit Judge:

---

[*]    The Honorable Josephine L. Staton, United States District Judge for the Central District of California, sitting by designation.

Under the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109–2, 119 Stat. 4, large multi-state class actions may be removed to federal court under requirements more permissive than those governing the removal of other civil actions. To prevent plaintiffs from evading CAFA's relaxed jurisdictional requirements, Congress made "mass actions" removable to federal court on largely the same basis as class actions. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 744 (2014). A "mass action" is defined as a civil action, other than a class action, "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i).

In this case, Cordis Corporation invoked CAFA's mass action provision as the basis for removing to federal court eight products liability suits filed against it in the Superior Court for Alameda County, California. (The district court's order also remanded a number of other related cases, but those cases are not specifically before us.) Each of the eight actions has fewer than 100 plaintiffs, but together they involve more than 100 named plaintiffs. The actions raise common questions of law and fact because they all seek damages for injuries caused by the same allegedly defective medical devices manufactured by Cordis. The parties agree that the jurisdictional requirements for removal under CAFA's mass action

provision are met, with one exception:  They dispute whether the plaintiffs' claims have been "proposed to be tried jointly."

Cordis argues that the plaintiffs proposed to try their claims jointly when they moved in state court to consolidate the eight actions.  In their motion, the plaintiffs requested consolidation of the actions "for all pretrial purposes, including discovery and other proceedings, and the institution of a bellwether-trial process." The motion noted that, because the actions involve the same allegedly defective medical devices, both the discovery sought from Cordis and the majority of the expert discovery will be identical in each case.  As a result, the plaintiffs stated, consolidation of the actions "for purposes of pretrial discovery and proceedings, along with the formation of a bellwether-trial process, will avoid unnecessary duplication of evidence and procedures in all of the actions, avoid the risk of inconsistent adjudications, and avoid many of the same witnesses testifying on common issues in all actions, as well as promote judicial economy and convenience."

The district court held that the plaintiffs' consolidation motion did not propose a joint trial of their claims, as required under § 1332(d)(11)(B)(i).  The cases therefore could not be removed under CAFA's mass action provision. Because Cordis asserted no other basis for federal jurisdiction, the district court

granted the plaintiffs' motion to remand the cases to the Alameda County Superior Court. We granted Cordis' petition for permission to appeal that ruling under 28 U.S.C. § 1453(c).

We can begin with two propositions that neither side disputes. First, the fact that more than 100 plaintiffs have sued Cordis in eight separate actions filed in the same court is not by itself sufficient to trigger removal jurisdiction under CAFA. Plaintiffs' lawyers are free to file multiple lawsuits with fewer than 100 plaintiffs based on the same factual allegations, even if their purpose in doing so is to avoid federal jurisdiction. *Corber v. Xanodyne Pharmaceuticals, Inc.*, 771 F.3d 1218, 1223 (9th Cir. 2014) (en banc). Before separate actions may be removed to federal court as a "mass action," 100 or more plaintiffs must take the affirmative step of proposing to try their claims jointly, such as by requesting assignment to a single judge "for purposes of discovery and trial," *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1163 (8th Cir. 2013), or by requesting consolidation "through trial" and "not solely for pretrial proceedings," *In re Abbott Laboratories, Inc.*, 698 F.3d 568, 573 (7th Cir. 2012). Second, if 100 or more plaintiffs in separate actions propose consolidating their cases solely for pretrial purposes, that too is insufficient to trigger removal jurisdiction. CAFA's definition of "mass action" expressly

excludes any civil action in which the plaintiffs' claims "have been consolidated or coordinated solely for pretrial proceedings." § 1332(d)(11)(B)(ii)(IV).

This appeal would be easy to resolve if the plaintiffs had stated that they sought consolidation "for all pretrial purposes, including discovery and other proceedings," and stopped there. Proposing consolidation for those purposes alone would bring this case squarely within the exclusion just quoted, particularly if the plaintiffs had also expressly disclaimed any desire for a joint trial. But the plaintiffs complicated things by proposing consolidation for the additional purpose of creating "a bellwether-trial process." The question before us is whether the plaintiffs' proposal for a bellwether-trial process amounts to a proposal to try their claims jointly.

The answer to that question depends on which kind of "bellwether-trial process" the plaintiffs had in mind. Two types of bellwether trials can be held when a large number of plaintiffs assert the same or similar claims against a common defendant or defendants. In the first type, the claims of a representative plaintiff (or small group of plaintiffs) are tried, and the parties in the other cases agree that they will be bound by the outcome of that trial, at least as to common issues. *See* ALI, Principles of the Law of Aggregate Litigation § 2.02, cmt. b, p. 87 (2010); Restatement (Second) of Judgments § 40, cmt. a, p. 390 (1980). In

the second (and far more common) type of bellwether trial, the claims of a representative plaintiff or plaintiffs are tried, but the outcome of the trial is binding only as to the parties involved in the trial itself. The results of the trial are used in the other cases purely for informational purposes as an aid to settlement. *See Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015).

If 100 or more plaintiffs propose holding a bellwether trial of the first type, in which the results of the trial will be binding on the plaintiffs in the other cases, they have proposed a joint trial of their claims for purposes of § 1332(d)(11)(B)(i). *Bullard v. Burlington Northern Santa Fe Railway Co.*, 535 F.3d 759, 762 (7th Cir. 2008). However, a proposal to hold a bellwether trial of the second type does *not* constitute a proposal to try the plaintiffs' claims jointly, for the verdict will not be binding on the other plaintiffs and will not actually resolve any aspect of their claims. True, a verdict favorable to the plaintiff in the bellwether trial might be binding on the *defendant* under ordinary principles of issue preclusion, but that is not enough. *See Briggs*, 796 F.3d at 1051. To constitute a trial in which the plaintiffs' claims are "tried jointly" for purposes of § 1332(d)(11)(B)(i), the results of the bellwether trial must have preclusive effect on the plaintiffs in the other cases as well.

In *Briggs*, we held that when plaintiffs propose a bellwether trial without saying anything more, we presume that they mean a bellwether trial in which the results will not be binding on the plaintiffs in the other cases but will instead be used for informational purposes only. *Id.* We must decide whether the plaintiffs in this case said something more in their consolidation motion to indicate that when they referred to "a bellwether-trial process," they meant a process in which the results of the bellwether trial would have preclusive effect on the plaintiffs in the other cases.

Cordis contends that the plaintiffs did say something more, as *Briggs* requires, in several respects. First, Cordis argues that the plaintiffs must have been proposing a bellwether trial whose results would have preclusive effect because they requested consolidation under California Code of Civil Procedure § 1048(a).[1] According to Cordis, § 1048(a) does not permit consolidation solely for pretrial purposes; thus, any request made under that statute must be construed as a proposal to try the plaintiffs' claims jointly. We reject that reading of the statute, as nothing in the text of § 1048(a) precludes consolidation for pretrial

---

[1] Section 1048(a) provides: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

purposes only. The text of the statute was revised in 1971 to conform in substance to Federal Rule of Civil Procedure 42, which has long been interpreted to allow for consolidation for pretrial purposes only. *See MacAlister v. Guterma*, 263 F.2d 65, 68–69 (2d Cir. 1958); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2382, p. 19 & n.20 (3d ed. 2008). Nor have we found any California cases holding that § 1048(a) forbids consolidation for pretrial purposes only. The case Cordis cites to support its view admittedly states that § 1048(a) authorizes two types of consolidation, one involving consolidation for purposes of trial and the other involving consolidation for all purposes, including trial. *Hamilton v. Asbestos Corp.*, 22 Cal. 4th 1127, 1147 (2000). But in that case the parties agreed that the actions had been consolidated at least for purposes of trial; the only issue was whether the consolidation extended to all other proceedings in the case as well. The court was not called upon to decide whether § 1048(a) permits consolidation for purposes of pretrial proceedings alone.

Second, Cordis contends that the plaintiffs' references in their consolidation motion to "a bellwether-trial process" must have meant a trial that would have preclusive effect, because the plaintiffs also stated in the motion that creating such a process would "avoid the risk of inconsistent adjudications." Cordis reads too much into the plaintiffs' statements. Whenever the plaintiffs mentioned avoiding

the risk of inconsistent adjudications, they mentioned it as one among several benefits of consolidating the cases "for purposes of pretrial discovery and proceedings, along with the formation of a bellwether-trial process."  We cannot tell from these statements whether avoiding the risk of inconsistent adjudications was deemed to be one of the benefits of creating a bellwether-trial process, or perhaps instead one of the benefits of consolidating the cases for pretrial proceedings.  Consolidating the cases for pretrial proceedings could, on its own, avoid the risk of inconsistent adjudications by eliminating the prospect of different judges rendering conflicting rulings on motions for summary judgment or motions in limine concerning the admissibility of key evidence.  Thus, the plaintiffs' references to the avoidance of inconsistent adjudications do not necessarily shed light on which type of bellwether trial they were proposing.  Since Cordis bears the burden of showing that the plaintiffs proposed a joint trial of their claims, *see Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013), the inconclusive nature of the plaintiffs' statements cuts against its position.

In this respect, our case differs from *Corber*, the precedent most supportive of Cordis' argument.  There, the plaintiffs requested coordination of their cases "for all purposes," and in support of that request they stated that coordinating the cases would reduce the risk of inconsistent judgments and conflicting

determinations of liability. 771 F.3d at 1223–24. We held that these statements confirmed that the plaintiffs' request for coordination "for all purposes" included for purposes of trial, because the risks they mentioned would likely be reduced only through some form of joint trial. *Id.* But we noted that the result would have been different had the plaintiffs limited their request for coordination to pretrial matters. *Id.* at 1224–25. In that event, the reference to the risk of inconsistent judgments and conflicting determinations of liability would not have conveyed an intention to propose a joint trial. That is the situation here: The plaintiffs requested consolidation for pretrial purposes, and because their references to the avoidance of inconsistent adjudications could have been tied to that aspect of their request alone, those references do not necessarily say anything about whether they were proposing a joint trial.

Finally, Cordis argues that any uncertainty regarding what the plaintiffs meant by "inconsistent adjudications" is dispelled by the plaintiffs' definition of that term: "different results because tried before different judge and jury, etc." That language, read in isolation, does suggest that a joint trial would be needed to avoid the risk of inconsistent adjudications. But the definition appears in a passage of the motion devoted to explaining the general purposes of consolidation, not the purposes for which the plaintiffs sought consolidation in this case. Moreover, the

plaintiffs immediately followed the definition with this disclaimer: "To be clear, Moving Plaintiffs are not requesting a consolidation of Related Actions for purposes of a single trial to determine the outcome for all plaintiffs, but rather a single judge to oversee and coordinate common discovery and pretrial proceedings." That statement negates any notion that the plaintiffs were speaking of a bellwether trial whose results would have preclusive effect in the other cases. And if further confirmation were needed that the plaintiffs proposed a bellwether trial to be used solely for informational purposes, it can be found in their subsequent statement that "consolidation of the Related Actions may create the opportunity for settlement of cases. Bellwether trials would likely prove an effective tool to resolution of the . . . cases."

In short, the plaintiffs requested consolidation for purposes of pretrial proceedings, which standing alone does not trigger removal jurisdiction under CAFA's mass action provision. The plaintiffs also requested consolidation for purposes of establishing a bellwether-trial process, but nothing they said indicated that they were referring to a bellwether trial whose results would have preclusive effect on the plaintiffs in the other cases. The district court therefore correctly held that removal jurisdiction does not exist under CAFA's mass action provision, and it properly remanded the cases to state court.

**AFFIRMED**.