**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRAVIS Z. GONZALES, an individual,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>CARMAX AUTO SUPERSTORES, LLC, a Virginia Limited Liability Company; SANTANDER CONSUMER USA, INC., an Illinois Corporation; SAFECO INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation,<br>*Defendants-Appellees*. | No. 14-56842<br><br>D.C. No.<br>8:13-cv-01391-CJC-RNB |

| | |
|---|---|
| TRAVIS Z. GONZALES, an individual, <br> *Plaintiff-Appellee*, <br><br> v. <br><br> CARMAX AUTO SUPERSTORES, LLC, a Virginia Limited Liability Company; SANTANDER CONSUMER USA, INC., an Illinois Corporation; SAFECO INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation, <br> *Defendants-Appellants*. | No. 14-56305 <br><br> D.C. No. 8:13-cv-01391-CJC-RNB <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted August 2, 2016
Pasadena, California

Filed October 20, 2016

Before: Stephen Reinhardt, Alex Kozinski, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Reinhardt

# SUMMARY[*]

## California Law

The panel reversed the district court's summary judgment in favor of CarMax Auto Superstores, LLC, and remanded with instructions to enter summary judgment for Travis Gonzales on his Consumer Legal Remedies Act and Unfair Competition Law claims, based on CarMax's alleged violations of California Vehicle Code section 11713.18(a)(6), which requires a car dealer to provide consumers with a "completed inspection report" prior to the sale of any "certified" used vehicle.

The panel held that the district court properly exercised diversity-based subject matter jurisdiction over the case. The panel held that the district court did not err in finding that the jurisdictional amount-in-controversy requirement was satisfied where the potential cost of complying with injunctive relief was considered along with Gonzales's claims for compensatory damages and punitive damages.

Interpreting the requirements of Cal. Veh. Code § 11713.18(a)(6), the panel held that a report that fails to indicate the results of an inspection in a manner that conveys the condition of individual car components to a buyer is not a "completed inspection report" under California law. The panel concluded that CarMax's generic list of car parts inspected failed to inform consumers of the material results of the inspection.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Hallen D. Rosner (argued), Rosner, Barry & Babbitt, LLP, San Diego, California, for Plaintiff-Appellant/Cross-Appellee.

Kurt A. Schlichter (argued), Steven C. Shonack, Jamie L. Keeton, Schlichter & Shonack, LLP, El Segundo, California, for Defendants-Appellees/Cross-Appellants.

**OPINION**

REINHARDT, Circuit Judge:

Travis Z. Gonzales sued CarMax Auto Superstores, LLC ("CarMax"), a used car retailer, after experiencing problems with a vehicle he purchased at one of its lots. Gonzales alleged violations of four California consumer protection laws: (1) the Consumer Legal Remedies Act ("CLRA"); (2) the Song-Beverly Consumer Warranty Act ("Song-Beverly"); (3) common law fraud and deceit; and (4) the Unfair Competition Law ("UCL"). Gonzales's claims under the CLRA and UCL were both based on CarMax's alleged violation of California Vehicle Code section 11713.18(a)(6), which requires a car dealer to provide consumers with a "completed inspection report" prior to the sale of any "certified" vehicle. The district court dismissed Gonzales's fraud and Song-Beverly claims and granted CarMax summary judgment on his CLRA and UCL claims.

The key issue before us is whether a report that fails to indicate the results of an inspection in a manner that conveys the condition of individual car components to a buyer is a

"completed inspection report" under California law. Because we conclude that it is not, we reverse the district court's decision to grant summary judgment to CarMax on Gonzales's CLRA and UCL claims.[1]

**Factual and Procedural Background**

Gonzales purchased a 2007 Infiniti G35 from CarMax's Costa Mesa sales lot. Gonzales alleges that he was drawn to CarMax after hearing radio and online advertisements regarding the benefits of purchasing a "certified" vehicle that had passed CarMax's rigorous "125-point" certification inspection. Gonzales further alleges that he would have paid less, or possibly not even purchased the car, had it not been a "certified" vehicle.

According to Gonzales, it is CarMax's policy to simply provide purchasers of used vehicles with a pre-printed "CarMax Quality Inspected Certificate" ("CQI Certificate") listing vehicle components that were inspected. Gonzales received two versions of the CQI Certificate: a one-sided CQI Certificate provided to him prior to sale, and a two-sided CQI

---

[1] Gonzales sued Santander Consumer USA, Inc. ("Santander") as the assignee of the purchase agreement for the vehicle. He also asserted a separate cause of action against Safeco Insurance Company of America ("Safeco"), as CarMax's bond holder, under California Vehicle Code section 11711, a fraud provision. The parties do not dispute that Santander and Safeco are liable only to the extent that CarMax is.

Finally, the district court denied CarMax's motion under California Civil Code section 1780(e) for attorney's fees as the prevailing party on Gonzales's CLRA claim. Because we reverse the district court's grant of summary judgment to CarMax on the CLRA claim, CarMax is no longer a prevailing party under § 1780(e) and therefore has no claim for attorney's fees.

Certificate, which was placed in the glove compartment before he took possession of the car. In addition to the two CQI Certificates that CarMax provides to purchasers of used vehicles, CarMax also uses a third document known as the "CQI/VQI Checklist." This is a checklist which contains 236 points of inspection and is filled out by a technician during the inspection process. The CQI/VQI Checklist, unlike the CQI Certificates, indicates the condition of each individual component inspected. Rather than provide the CQI/VQI Checklist to consumers, CarMax destroys the document after the inspection results are entered into its electronic system, and no copy of the Checklist is retained.

Shortly after purchasing the Infiniti, Gonzales experienced some difficulty with the car. He contended that the brake pads needed replacing, there was a clicking noise coming from the engine, and the windows malfunctioned. Additionally, the check-engine light illuminated routinely, there were problems with the transmission, the clicking noise from the engine persisted, and other warning lights on the dashboard illuminated "in clusters."

Gonzales filed suit in California state court alleging that CarMax violated California consumer protection laws by selling him a lemon and falsely claiming that the car was certified. Gonzales's central argument is that CarMax violated California law by failing to provide him with a "completed inspection report" prior to the sale of the "certified" vehicle.

CarMax timely filed a notice of removal pursuant to 28 U.S.C. § 1441(b) claiming diversity jurisdiction. A week after removal, CarMax filed a motion to dismiss the first amended complaint, as well as a motion to strike Gonzales's punitive

damages claim. The following month, while the motion to dismiss the first amended complaint was pending, the district judge issued an order to show cause regarding subject matter jurisdiction, noting that he had "serious doubts" whether the case met the amount-in-controversy requirement. After the parties responded to the order to show cause, the district judge found that CarMax had shown by a preponderance of the evidence that the amount in controversy was over $75,000 and thus the action was properly removable.

The district court then granted CarMax's motion to dismiss on all claims except for Gonzales's CLRA and UCL claims. Following discovery, CarMax filed a motion for summary judgment on Gonzales's CLRA and UCL claims. The district court granted the motiom, holding that there was no material legal difference between the one-sided form and the two-sided form, and that both forms were legally sufficient. Gonzales appeals the district court's dismissal and summary judgment orders. We consider only the latter here. We dispose of the other claims in a memorandum disposition filed concurrently.

## Discussion

### I.  Standards of Review

We review *de novo* a district court's determination that diversity jurisdiction exists, but review any factual determinations necessary to establish diversity jurisdiction for clear error. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 979–80 (9th Cir. 2005).

An order granting summary judgment is reviewed *de novo*. "We must determine, viewing the evidence in the light

most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant law." *Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 305 F.3d 913, 916 (9th Cir. 2002).

## II.     Subject Matter Jurisdiction

Gonzales contends that the district judge erred in exercising diversity-based subject matter jurisdiction over this case. We conclude that he did not.

A defendant generally may remove any action filed in state court if a federal district court would have had original jurisdiction.   28 U.S.C. § 1441(a). To establish original jurisdiction based on diversity of parties, the amount in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).  We have defined the amount in controversy as the "amount at stake in the underlying litigation," *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005); this includes any result of the litigation, excluding interests and costs, that "entail[s] a payment" by the defendant. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). This amount includes, *inter alia*, damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000).

In this case, when the potential cost of complying with injunctive relief is considered along with Gonzales's claims for compensatory damages and punitive damages, the district

court did not err in finding that the jurisdictional amount-in-controversy requirement was satisfied.[2]

## III.    Consumer Legal Remedies Act and Unfair Competition Law Claims

Section 11713.18 of the California Vehicle Code prohibits a car dealer from either advertising for sale or selling a used vehicle as "certified" under nine circumstances, including if:

> Prior to sale, the dealer fails to provide the buyer with a completed inspection report indicating all the components inspected.

Cal. Veh. Code § 11713.18(a)(6). The statute further provides that a violation of any of these provisions is actionable under the CLRA, the UCL, false advertising statutes, or any other applicable state or federal law. Cal. Veh. Code § 11713.18(b).

---

[2] It remains an open question whether attorney's fees that are anticipated but unaccrued at the time of removal or filing in federal court, such as those at issue in this case, may be included in the amount-in-controversy. Other circuits and the district courts in this circuit are divided on the issue. *Compare Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) (holding that the inclusion of anticipated but unaccrued fees that "have not been and may never be incurred" are not "in controversy" between the parties because they are too uncertain given that litigation can end through settlement at any time), *with Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (concluding, without extensive discussion, that estimated attorney's fees are included). Because we conclude that the amount in controversy requirement is satisfied here regardless of whether anticipated but unaccrued attorney's fees are considered in the calculation, we do not include the fees in our calculations and do not resolve this open question here.

Here, the alleged failure to provide a completed inspection report underlies Gonzales's CLRA and UCL claims. Gonzales contends that CarMax failed to provide a "completed inspection report" before selling him a "certified" vehicle. We must decide whether the CQI certificates that CarMax provides to consumers satisfy the requirements of § 11713.18(a)(6). We hold they do not, because the CQI certificates fail to provide the actual results of the inspection for the individual components, thus rendering the inspection reports incomplete.

Because this case was removed to federal court under diversity jurisdiction, California law applies. *St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F.2d 864, 867 (9th Cir. 1979). When a state's highest court has not yet ruled on an issue, we must reasonably determine the result that the highest state court would reach if it were deciding the case. *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). In doing so, we may look to decisions from state appellate courts for guidance. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), *modified on other grounds*, 810 F.2d 1517 (9th Cir. 1987). In the present case, however, there are currently no published opinions from any California appellate courts interpreting section 117.1318(a)(6).[3] Even so, we are not

---

[3] On August 10, 2016, during the pendency of this appeal, the California Supreme Court ordered depublication of a decision by the California Court of Appeal for the Fourth District in *Brooks v. CarMax Auto Superstores California*, *LLC*, 201 Cal. Rptr. 3d 138 (Ct. App. 2016). In an opinion certified for partial publication in relevant part, the *Brooks* court had held that CarMax's CQI certificate was a "completed inspection report" under section 11713.18(a)(6). *See id.* at 144. That opinion may no longer be cited as precedent pursuant to Rule 8.1115 of the California Rules of Court.

precluded from affording relief even when the state Supreme Court and state legislature fail to provide a clear rule. *Air-Sea Forwarders, Inc. v. Air Asia Co*., 880 F.2d 176, 186 (9th Cir. 1989).

When addressing questions of statutory interpretation under California law, we "[must] ascertain the intent of the Legislature so as to effectuate the purpose of the law." *People v. Coronado*, 906 P.2d 1232, 1234 (Cal. 1995) (internal cquotation marks and citation omitted) (alteration in original). The California Supreme Court first looks to the language of the statute, giving effect to the words' plain meaning; "[i]f the language is unambiguous, the plain meaning controls." *Voices of the Wetlands v. State Water Res. Control Bd.*, 52 Cal 4th 499, 519 (2011).

A statute's plain meaning, however, cannot be determined without reference to the context in which the words are used. *See Prof'l Engineers in California Gov't v. Brown*, 177 Cal. Rptr. 3d 567, 572 (Ct. App. 2014). Consequently, when California courts construe the plain meaning of statutory language, they consider whether the statute contains a term of art with a specific legal or technical meaning. *See In re Marriage of Davis*, 352 P.3d 401, 404 (Cal. 2015) ("In considering whether this statute has a plain meaning, we recognize that the phrase 'living separate and apart' is a term of art.") (internal quotation marks and citations omitted); *Tex. Commerce Bank v. Garamendi*, 14 Cal. Rptr. 2d 854, 863 (Ct. App. 1992) ("[W]ords employed in a statute dealing with legal or commercial matters are presumed to be used in their established legal or technical meanings unless otherwise clearly indicated by the statute."); *see also Ruiz v. Podolsky*, 50 Cal. 4th 838, 850 n.3 (2010) ("[W]hen the Legislature uses a term of art, a court construing that use must assume that the

Legislature was aware of the ramifications of its choice of language."); *Prof'l Eng'rs in Cal. Gov't v. Brown*, 177 Cal. Rptr. 3d at 572.

With these principles of California law in mind, we first turn to the plain meaning of the statutory language. Section 11713.18(a)(6) requires sellers of used cars to provide buyers with a completed inspection report. The statute does not define the term "inspection report," but in the automobile industry, "inspection report" is a term of art with an established technical meaning. Consequently, we must assume that the Legislature was aware of the meaning of "inspection report" and intended this meaning to control. *Cf. Prof'l Eng'rs in Cal. Gov't v. Brown*, 177 Cal. Rptr. 3d at 572 (explaining that the term "'personal services' has an accepted meaning in the context of budget legislation" and construing the term in accordance with that accepted meaning).

In the automobile industry, an "inspection report" is understood to mean a report that lists the components inspected, with a space corresponding to each component in which the inspector designates whether or not that component is functional. A "completed inspection report" is one in which those spaces have been appropriately marked so as to indicate the result of the inspection. Examples of automobile "inspection reports" abound in statutes, regulations, and everyday usage in the context of the industry. For example, this technical understanding of the term is reflected in Form

OL 221A, the safety inspection report utilized by the California DMV for instructional vehicles,[4] and in the "Vehicle Inspection Report" form[5] used by the California Department of Transportation ("CalTrans") under its "Enhanced Mobility of Seniors and Individuals with Disabilities Program."[6] Similarly, California Department of Highway Patrol Regulations and Federal Motor Carrier Safety Administration Regulations both demonstrate that "inspection report" is a technical term that means a list of components specifying whether the components are operational: both sets of regulations require "vehicle inspection reports" to "list any defect or deficiency discovered by or reported to the driver." *See* C.F.R. § 396.11(a)(2)(i); Cal. Code Regs. tit. 13, § 1215(b)(1)(B), (e).

Finally, while § 11713.18 itself does not define "inspection report," the statutes of other states demonstrate that this term is consistently understood to bear a technical

---

[4] *See* Cal Dep't of Motor Vehicles, *Safety Inspection Report, Vehicle Used for Instruction, OL 221A* (2007), https://www.dmv.ca.gov/portal/wcm/connect/ea268eba-b3ed-44f3-965a-190e62aa9dcd/ol221a.pdf?MOD=AJPERES.

[5] *See* Fed. Transit Admin., *Vehicle Inspection Report* (2008), http://dot.ca.gov/hq/MassTrans/Docs-Pdfs/5310/5310-AgcyMon.doc.

[6] Pursuant to 49 U.S.C. § 5310, states receive formula funding "for the purpose of assisting private nonprofit groups in meeting the transportation needs of older adults and people with disabilities when the transportation service provided is unavailable, insufficient, or inappropriate to meeting these needs." *See Enhanced Mobility of Seniors & Individuals with Disabilities – Section 5310*, Fed. Transit Admin., https://www.transit.dot.gov/funding/grants/enhanced-mobility-seniors-individuals-disabilities-section-5310 (last visited Oct. 5, 2016).

meaning in the automobile industry, and that under this technical understanding, an inspection report must contain component-specific results. In Illinois, for example, a "vehicle inspection report" must contain a "component reject area" where an inspector can "[m]ark the appropriate bubble(s) for any defects found on the vehicle during the safety test." Ill. Adm. Code tit. 92, § 451.150(k)(14)(A); *see also* N.J. Admin. Code § 13:20–43.9(a)(13) (requiring motor vehicle inspection report to include "pass/fail result of applicable visual inspections"); Ariz. Admin. Code § R18-2-1011 (requiring a "uniquely numbered vehicle inspection report" that contains, among other things, "repair requirements; final test results; [and] repairs performed").[7]

The term "inspection report" in § 11713.18(a)(6) thus has a technical, industry-specific meaning. It requires commercial sellers of used cars to provide a form indicating the specific results of the inspection for the individual components inspected. The statute also requires that this "inspection report" be "completed," and an inspection report, under the technical meaning accorded that term across the automobile industry, is not completed without an indication of the pass/fail result with respect to each component.

To require only an unmarked list of components would disregard the requirements of an "inspection report" and render the word "completed" superfluous. Under California

---

[7] That "inspection report" is a technical term of art with an industry-specific meaning is further supported by the fact that Lexus, Honda, General Motors, Ford, Audi, and BMW all provide inspection reports on which the inspector marks whether each individual component inspected operates satisfactorily. This list of manufacturers is intended to be illustrative and by no means exhaustive.

law, "significance should be given to every word, phrase, sentence and part of an act." *Moyer v. Workmen's Comp. Appeals Bd.*, 514 P.2d 1224, 1229 (Cal. 1973) (in bank) (internal quotation marks and citation omitted). A construction that would make some words surplusage is to be avoided and words must be viewed in context, keeping in mind the nature and obvious purpose of the statute. *Id*.

The purpose, history, and public policy of the statute further support our interpretation of "completed inspection report." *See Imperial Merch. Servs., Inc. v. Hunt*, 212 P.3d 736, 740 (Cal. 2009) ("If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (internal quotation marks and citation omitted)).

Section 11713.18(a)(6) is part of a remedial statute that must be construed liberally in favor of the class whom it was passed to protect. *See Cal. Assn. of Health Facilities v. Dep't of Health Servs.*, 940 P.2d 323, 329 (Cal. 1997). The California Legislature enacted the section in 2005 as part of California's "Car Buyer's Bill of Rights," which, according to the author of the bill, aimed to "strengthen the protections afforded [to] California car buyers by improving laws regarding the sales, marketing, and financing of new and used vehicles." Assembly Judiciary Comm., 2005–2006 Session, Analysis of AB-68 5 (March 1, 2005).[8] Prior to the enactment of this bill, there was no legal standard for use of

---

[8] When California courts analyze legislative history, the materials they consider "can include bill analyses prepared by staff for legislative committees considering passage of the legislation in question." *People v. Taylor*, 68 Cal. Rptr. 3d 682, 685 (Ct. App. 2007).

the term "certified," despite the growing trend for dealers to "certify" used cars. Senate Judiciary Comm., 2005–2006 Session, Analysis of AB-68 5 (June 14, 2005). This bill aimed to "provide[] some assurances to consumers that they are getting what they bargained for," especially given that cars are a "big[] ticket item" and "scams involving auto sales can have a devastating impact on a family's budget and ability to function productively in society." Assembly Judiciary Comm., 2005–2006 Session, Analysis of AB-68 5–7 (March 1, 2005) (quoting Consumers for Auto Reliability and Safety (CARS), the sponsor of the bill). The Legislature expressed concerns that "business practices engaged in by the automobile industry in general and automobile dealers in particular . . . discourage price transparency, limit consumer choice and take advantage of consumer ignorance." Senate Judiciary Comm., 2005–2006 Session, Analysis of AB-68 2 (June 14, 2005). The Car Buyer's Bill of Rights contained a number of provisions, including a limitation on dealer commissions for arranging financing, a requirement mandating additional disclosures concerning a buyer's credit score, and, most important for the purposes of this appeal, an inspection report that provides information to the prospective buyer of a "certified" vehicle. *Id.* at 1.

A principal purpose of the Car Buyer's Bill of Rights was to promote transparency in the sale of vehicles, especially those marketed as "certified." An interpretation of section 11713.18(a)(6) that recognized CarMax's CQI Certificates, which are devoid of any information about the condition of the individual components inspected, as "completed inspection reports" would undermine rather than foster the statute's goal of promoting transparency in used car sales.

When viewed in this context, the statute requires dealers to provide consumers with information about the results of the inspection for each particular component. Sellers cannot merely list components that have been inspected (as CarMax's CQI certificate does), thereby leaving the consumer ignorant as to whether the various components satisfactorily passed the inspection. When section 11713.18(a)(6) requires dealers to provide a "completed inspection report," it guarantees consumers the right to know whether the individual components of a car have been found functional as the result of an inspection. Completed inspection reports, as that term is understood in the industry and in light of the statute's purpose, require the provision of that information.

CarMax's certificates do not provide any of the necessary information about the status of the individual components inspected under its "rigorous CarMax 125-point Quality Inspection." CarMax's CQI certificates merely guarantee that the vehicle's overall condition satisfied *its* certification program and list the components inspected under that program. After receiving this certificate, the consumer knows neither the condition of the individual components nor which, or how many, components must pass the test before a vehicle is "certified." In fact, the consumer knows nothing specific about the status of the vehicle as a whole or of the individual components because he does not know what the standards are for satisfying the CarMax certification program.[9] The vehicle

---

[9] Each individual retailer of "certified" vehicles follows its own individual "certification program"; there is no uniform substantive legal standard governing these certification programs. As the California Motor Car Dealers Association (CMCDA), an association consisting of "franchised new car dealers," explained in a hearing before the Assembly

may have passed inspection, but do the brake lines function properly? The consumer does not know what it means to "pass" CarMax's inspection: are all of the inspected components fully functional, or just a mere majority (or fewer) of the components inspected? Which components must be satisfactory, if any, before the car is deemed certified? Under CarMax's certification program, the consumer remains uninformed, and the consumer-protection and transparency-promoting purposes of the statute remain unfulfilled.[10]

---

Committee on the Judiciary, the certified used car programs offered by its members are "'factory certified programs,' i.e. the certification standards and requirements are set by their franchisors." Assem. Com. on Judiciary, Analysis of Assem. Bill No. 68 (2005-2006 Reg. Sess.) Mar. 1, 2005, p. 7. Consequently, "one manufacturer/franchisor's certified used car program may differ from another," although "they all have common eligibility elements." *Id.*

[10] Gonzales also argues that the CQI certificate is incomplete for another reason, found on the face of the certificate itself, which states: "We check over 125 points including (but not limited to)" those listed on the CQI certificate. In reality, CarMax inspects over 200 points during its vehicle inspections, during which a technician completes a form called the CQI/VQI Checklist. Unlike the CQI certificate, the CQI/VQI certificate does seem to "indicate *all* the components inspected." *See* Cal. Veh. Code §11713.18(a)(6) (emphasis added).

CarMax argues that "components" is not defined under section 11713.18(a)(6) and that "components" has a technical meaning, which corresponds to the subheadings on the CQI certificates (such as "engine," brake system," and "lighting system"). Under CarMax's definition of "components," the "lighting system" is a component, but the "brake lights" are not. We need not reach the issue of whether the CQI certificates in fact indicate all components inspected, as we hold these certificates are legally insufficient on other grounds.

CarMax relies heavily on the statute's drafting history to argue that the Legislature did not intend to require car dealers to provide more than just a list of components inspected. It cites the deletion of a clause that initially appeared at the end of section 11713.18(a)(6). CarMax's argument is unpersuasive because the statutory revision did not relate to and had no effect upon the meaning of the words "completed inspection report." To the contrary, the deletion served an entirely different purpose: it dropped from the statute a substantive requirement while leaving unaffected the requirement relating to disclosure of information.

The statute originally stated:

> Prior to sale, the dealer provides the buyer with a completed inspection report indicating all the components inspected pursuant to the vehicle certification program and *certifies that all of the inspected components meet the express written standards of the vehicle certification program*.

Cal. Assemb. B. No. 68, 2005-06 Regular Session (5/26/2005 draft of bill) (emphasis added).

The language in italics was deleted. The deleted language would have imposed a substantive obligation on car dealers to certify that every one of the inspected components of each of its certified vehicles met the dealer's certification standards. This substantive requirement was deleted without altering the dealer's obligation to provide a "completed inspection report" disclosing the results of its inspection with respect to each component. *See Knapp v. CarMax Auto Superstores Cal., LLC*, No. CV 14-0112-BRO (SPx) 2014

U.S. Dist. LEXIS 159722, at *20 (C.D. Cal. July 21, 2014). Specifically, under the deleted language, a car dealer *could not* have sold a "certified" vehicle if *any* of its components failed to "meet the express written standards of the vehicle certification program." After the deletion of this language, such a vehicle *could* be sold as certified, so long as the dealer complied with the disclosure provision of the statute and provided the results of the inspection in a "completed inspection report." Thus, under the amended version of the statute, even if some of the various components needed repair, the dealers were not prohibited from selling the "certified" vehicle in less-than-perfect condition, so long as the buyer had been informed of the vehicle's true condition.

In sum, interpreting the statute to require only that sellers provide a list of vehicle components inspected, without any indication of whether the individual components are functional or defective, contravenes the purpose of the statute and its plain meaning. CarMax's generic list of car parts inspected is not only of little use to a car buyer, but it also fails to make the car buying process more transparent, because it fails to inform consumers of the material results of the inspection.[11]   Because we hold as a matter of law that CarMax's CQI certificates are not "completed inspection reports," we reverse the district court's grant of summary judgment to CarMax and grant summary judgment to

---

[11] Gonzales also argues that the language "prior to sale" in section 11713.18(a)(6) means that dealers must provide a completed inspection report before the sales contact is signed. CarMax argues that "prior to sale" means after the contract is signed and the buyer "has taken physical possession or delivery of the vehicle." Because we hold that neither CarMax's one-sided CQI certificate nor its two-sided CQI certificate qualifies as a "completed inspection report," we need not address the meaning of "prior to sale."

Gonzales on his CLRA and UCL claims. Although Gonzales did not himself move for summary judgment in the district court, we may grant summary judgment *sua sponte* to a non-moving party if, drawing all inferences in favor of the moving party, there are no genuine issues of material fact, the moving party has "be[en] given reasonable notice that the sufficiency of his or her claim will be in issue," and the nonmoving party is entitled to summary judgment as a matter of law. *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) (internal quotation marks and citation omitted). In the present case, although CarMax, the moving party, had reasonable notice that the question of whether the CQI certificates are "completed inspection reports" would be at issue, it failed to establish a genuine issue of material fact as to that question: CarMax's CQI certificates are facially insufficient as a matter of law.

**Conclusion**

The California Legislature adopted the Car Buyer's Bill of Rights to protect consumers and to foster transparency in the sale of motor vehicles. Section 11713.18(a)(6) in particular exists to ensure that when dealers advertise used cars as "certified," they must furnish a "completed inspection report" regarding all the components inspected, thereby providing the buyer with specific information about the condition of each component of his vehicle. If CarMax's generic, and ultimately uninformative, list of components inspected were considered a "completed inspection report," section 11713.18(a)(6)'s effectiveness in promoting transparency in the sale of certified cars would be substantially diminished. We therefore reverse the district court's grant of summary judgment to CarMax and remand

with instructions to enter summary judgment for Gonzales on his CLRA and UCL claims.

**REVERSED AND REMANDED.**