**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MATTHEW D. GREENE, an individual, on behalf of himself, the proposed class(es), all others similarly situated, and on behalf of the general public,

*Plaintiff-Appellee*,

v.

HARLEY-DAVIDSON, INC., a Wisconsin corporation; HARLEY-DAVIDSON MOTOR COMPANY, INC., a Wisconsin corporation; HARLEY-DAVIDSON MOTOR COMPANY OPERATIONS, INC., a Wisconsin corporation,

*Defendants-Appellants*,

and

DOES, 1 through 10, inclusive,

*Defendant.*

No. 20-55281

D.C. No.
5:19-cv-01647-
RGK-KK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted May 14, 2020
Pasadena, California

Filed July 14, 2020

Before:  Daniel P. Collins and Kenneth K. Lee, Circuit Judges, and Gregory A. Presnell,[*] District Judge.

Opinion by Judge Lee

## SUMMARY[**]

**Class Action Fairness Act**

The panel reversed the district court's order granting plaintiff's motion to remand to state court an action that was removed by defendant Harley-Davidson, Inc. to federal court under the Class Action Fairness Act ("CAFA").

CAFA gives federal courts original jurisdiction over class actions that have a class of over 100 members, minimal diversity of citizenship between the parties, and an amount of controversy of more than $5 million.

Harley-Davidson alleged the following damages satisfied the CAFA amount-in-controversy requirement: at least $2,166,666 in compensatory damages based on the prayer in the complaint; approximately $2,166,666 in punitive damages based on a 1:1 punitive/compensatory damages ratio; and $1,083,333 in attorneys' fees.

---

[*] The Honorable Gregory A. Presnell, United States District Judge for the Middle District of Florida, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the district court erred in holding that Harley-Davidson failed to provide sufficient evidence that more than $5 million was at stake. Specifically, the panel held that a defendant satisfies CAFA's amount-in-controversy requirement if it is reasonably possible that it may be liable for the proffered punitive damages amount. The panel held further that Harley-Davidson met this burden by citing four cases where juries had awarded punitive damages at ratios higher than 1:1 for claims based on California's Consumer Legal Remedies Act. In doing so, Harley-Davidson relied on a reasonable chain of logic to assume that a similar amount was at stake here, and presented sufficient evidence that the amount-in-controversy exceeded $5 million.

The panel held that it was improper for the district court to consider Harley-Davidson's potential statute of limitations affirmative defense in determining the amount-in-controversy. Plaintiff argued that Harley-Davidson's potential statute of limitations defense precluded damages for unnamed class members. The panel held that plaintiff could not smuggle merits-based arguments into the jurisdictional inquiry concerning the amount-in-controversy.

The panel held that plaintiff's argument that two of the defendants lacked standing because they were non-moving parties was meritless. First, a class action may be removed by any defendant without the consent of co-defendants under CAFA. Second, all three defendants opposed plaintiff's motion to remand, and were aggrieved by the decision being appealed.

The panel concluded that Harley-Davidson met its burden of showing that the amount-in-controversy exceeded $5 million under CAFA.

## COUNSEL

James S. Azadian (argued) and Cory L. Webster, Dykema Gossett LLP, Los Angeles, California, for Defendants-Appellants.

Ross H. Hyslop (argued), Pestotnik LLP, San Diego, California, for Plaintiff-Appellee.

## OPINION

LEE, Circuit Judge:

From *Easy Rider*'s Captain America to the Rolling Thunder motorcade, Harley-Davidson motorcycles have symbolized the spirit of rebelliousness and rugged individualism in American culture. Class actions, too, are uniquely American: the United States pioneered this litigation vehicle, and it remains the most robust in the world. These two American institutions intersect in this case about allegedly deceptive pricing of Harley-Davidson motorcycles.

This case presents a technical, but unresolved, question in this circuit: If the defendant relies on potential punitive damages to meet the amount-in-controversy requirement for removal under the Class Action Fairness Act, what is the defendant's burden in establishing that amount? We hold that the defendant must show that the punitive damages amount is reasonably possible. Harley-Davidson met that standard by identifying prior cases involving the same cause of action in which the juries awarded punitive damages based on the same or higher punitive/compensatory damages ratios than the one relied upon by Harley-Davidson. We thus

reverse the district court's order remanding this case to state court because it effectively required Harley-Davison to provide evidence that the proffered punitive damages amount is probable or likely.

## BACKGROUND

In 2015, Plaintiff-Appellee Matthew Greene started shopping for a Harley-Davidson motorcycle. He researched online, reviewed Harley-Davidson's catalogs and brochures, and browsed motorcycles at the Riverside Harley-Davidson dealership. The motorcycles had price tags with a "manufacturer suggested retail price," and according to Harley-Davidson's advertising, the price "exclude[d] dealer setup, taxes, title and licensing." Based on this advertising, Greene expected the dealership to charge him a dealer setup fee on top of the suggested retail price.

Greene bought a motorcycle from the Riverside dealership on June 13, 2015. He paid $23,799.63, which included a $1,399 freight and prep charge. As expected, Greene paid the $1,399 fee in addition to the manufacturer's suggested retail price. But, unbeknownst to Greene, the dealership had already performed the necessary prep and setup tasks for the motorcycle, and Harley-Davidson had reimbursed the dealership for the costs of doing so. Therefore, contrary to the dealership's advertising, the suggested retail price actually included the dealership's setup costs.

Two years later, Harley-Davidson's advertising revealed that it in fact reimburses dealers for performing setup tasks. Greene now claims that he would not have paid the $1,399 fee if not for Harley-Davidson's fraudulent statement that the suggested retail price did not include dealer setup.

Greene filed a putative class action against Harley-Davidson on June 11, 2019, in California state court.[1] Greene brought claims for (1) false advertising, (2) violations of the Consumer Legal Remedies Act (CLRA), (3) breach of express warranty, (4) negligent misrepresentation, (5) fraud and deceit (6) quasi-contract/unjust enrichment, (7) aiding and abetting, and (8) unfair competition.

Greene seeks (1) damages "in an amount not less than $1,000,000 for each year beginning June 11, 2015 and continuing to August 23, 2017," (2) reasonable attorneys' fees under a statutory fee shifting provision, (3) punitive damages, and (4) injunctive relief. He proposes a class of "[a]ll consumers who, for the period beginning June 11, 2015 through August 22, 2017, purchased or leased from Riverside Harley-Davidson a new, assembled Harley-Davidson motorcycle," and alleges that the class "likely consists of thousands of members." The complaint also says that "any applicable statutes of limitation[s] should be tolled and are tolled under governing law."

Harley-Davidson removed the case, invoking federal jurisdiction under the Class Action Fairness Act (CAFA). Harley-Davidson alleged that the following damages satisfied CAFA's requirement that the amount in controversy exceeds $5 million: (1) at least $2,166,666 in compensatory damages based on the prayer in the Complaint (at least $1,000,000/year from June 11, 2015 to August 23, 2017); (2) approximately $2,166,666 in punitive damages based on a 1:1 punitive/compensatory damages ratio; and

---

[1] "Harley-Davidson" refers to all three defendants.

(3) $1,083,333 in attorneys' fees, or 25 percent of the total amount in controversy.

Greene moved to remand the case back to state court, challenging Harley-Davidson's punitive damages and attorneys' fees amounts. Greene argued that only the CLRA and fraud causes of action allow for punitive damages, and that both have a three-year statute of limitations. Invoking tolling principles established in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), Green argued that his punitive damages prayers had to be based on his individual claims, not the class claims.[2] He argued that his individual claims were for $1,399, so a 1:1 ratio would yield a punitive damages award of $1,399, not $2,166,666. Greene also challenged Harley-Davidson's attorneys' fees amount, arguing that the "common fund" fees come out of the total damages and are not added to the total amount in controversy.

Harley-Davidson opposed the motion, attaching (1) evidence that juries had awarded punitive damages above a 1:1 ratio in four prior California CLRA cases and (2) evidence that Greene's attorney sought attorneys' fees totaling 35 percent of the recovery in a similar class action.

---

[2] In *American Pipe*, the Court held that if class certification is denied, the statute of limitation is tolled for the individual (non-class) claims for those members of the purported class. 414 U.S. at 553.

The district court granted Greene's motion to remand.  It acknowledged that Harley-Davidson had cited several cases in which the jury had awarded punitive damages on at least a 1:1 ratio. But it ruled that such evidence was insufficient because Harley-Davidson made "no attempt to analogize or explain how these cases are similar to the instant action. Although [Harley-Davidson] was not required to submit evidence of punitive damage awards in an identical case as this one, simply citing to cases without analysis or explanation is insufficient." *Greene v. Harley Davidson*, No. 5:19-CV-01647-RGK-KK, 2019 WL 5855982, at *3 (C.D. Cal. Nov. 7, 2019) (quotation marks and citations omitted). The court thus held that, even assuming Harley-Davidson's attorneys' fees amount was correct, Harley-Davidson had not established by a preponderance of the evidence that the amount in controversy exceeded $5 million. *Id.* at *4.  Finally, the district court concluded by noting that the potential recovery for punitive damages was $1,399, not $2,166,166. *Id.* at *3.

Harley-Davidson timely filed a petition for permission to appeal, which was granted on March 16, 2020.  We have jurisdiction under 28 U.S.C. § 1453.

## STANDARD OF REVIEW

The Court "review[s] remand orders in CAFA cases de novo." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 792 (9th Cir. 2018)).

## ANALYSIS

### I. Harley-Davidson provided sufficient evidence showing that the potential punitive damages amount was possible.

CAFA gives federal courts original jurisdiction over class actions that have a class of over 100 members, minimal diversity between the parties, and an amount in controversy of more than $5 million. 28 U.S.C. § 1332(d); *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 592 (2013).

The only dispute here is whether Harley-Davidson has met the amount-in-controversy requirement. To meet this requirement, Harley-Davidson presented evidence that juries have awarded punitive damages above a 1:1 punitive/compensatory damages ratio in other fraud cases involving the same statute at issue. The district court, however, ruled that it was not enough to merely cite cases involving the same cause of action; rather, a defendant has the burden of comparing and analogizing the underlying factual allegations to show that the punitive damages ratio is permissible.

The district court erred in holding that Harley-Davidson failed to provide sufficient evidence that more than $5 million is at stake. To determine the amount in controversy, we "first look to the complaint." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). When federal jurisdiction is challenged and the complaint is silent about damages, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Id.* (citation omitted). The damages assessment "may require a chain of reasoning that includes

assumptions," but those assumptions "need some reasonable ground underlying them." *Id.* at 1199.

To meet CAFA's amount-in-controversy requirement, a defendant needs to plausibly show that it is reasonably possible that the potential liability exceeds $5 million. As our court has noted, the amount in controversy is the "amount *at stake* in the underlying litigation." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (emphasis added) (quotation marks and citations omitted). "Amount at stake" does not mean likely or probable liability; rather, it refers to possible liability.

The language of the removal statutory provision supports this view. Under 28 U.S.C. § 1446(a), a defendant needs to offer a "short and plain statement of the grounds for removal." The Supreme Court has held that "Congress, by borrowing the familiar short and plain statement standard from Rule 8(a), intended to simplify the pleading requirements for removal and to clarify that courts should apply the same liberal rules to removal allegations that are applied to other matters of pleading." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quotation marks and citations omitted). And although a presumption against federal jurisdiction exists in the usual diversity case, "no antiremoval presumption attends cases invoking CAFA." *Id.* (citations omitted).

In short, a defendant satisfies the amount-in-controversy requirement under CAFA if it is reasonably possible that it may be liable for the proffered punitive damages amount. One way to meet this burden is to cite a case based on the same or a similar statute in which the jury or court awarded punitive damages based on the punitive-compensatory damages ratio relied upon by the defendant in its removal

notice.[3] Here, Harley-Davidson met that burden by citing four cases where juries had awarded punitive damages at ratios higher than 1:1 for claims based on the CLRA. In doing so, Harley-Davidson "relied on a reasonable chain of logic" to assume that a similar amount was at stake here, and "presented sufficient evidence to establish that the amount in controversy exceeds $5 million." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

Several of our sister circuits have adopted the same or a similar standard for establishing potential punitive damages to satisfy the amount-in-controversy requirement. For example, in *Pirozzi v. Massage Envy Franchising, LLC*, the Eighth Circuit held that a proposed punitive damages amount equal to the compensatory damages and attorneys' fees request was sufficient because courts have upheld higher ratios in cases based on the same anti-fraud statute. 938 F.3d 981, 984 (8th Cir. 2019). The Seventh Circuit has also cautioned that courts should not assess the likelihood of a large punitive/compensatory damages ratio — as long as there is a prior decision reflecting that ratio and thus making it "not impossible" — because it would otherwise require delving into the merits of the case. *Keeling v. Esurance Inc. Co.*, 660 F.3d 273, 275 (7th Cir. 2011). Similarly, the Tenth Circuit has held that a defendant need only provide facts that make it "possible that punitive damages are in play." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012) (emphasis, quotation marks, and citation omitted) (stating that a defendant may "point to facts alleged in the complaint, the nature of the claims, or evidence in the record to demonstrate that an award of

---

[3] We note that this is not the exclusive method to show that the punitive/compensatory damages ratio is possible. We leave for another day whether there are other ways to meet this requirement.

punitive damages is possible."). Finally, the Third Circuit has suggested that a defendant need only show that it is subject to "possible exposure" to punitive damages to meet its burden for the amount in controversy. *See Judon v. Travelers Property Cas. Co. of America*, 773 F.3d 495, 508 n. 12 (3d Cir. 2014).

The district court, however, required Harley-Davidson to do more than cite a prior case showing that such a punitive damages ratio is possible. Rather, it demanded that Harley-Davidson "analogize or explain how [the cited] cases are similar to the instant action." *Greene*, 2019 WL 5855982, at *3. But by requiring Harley-Davidson to show similarities to other cases, the district court improperly asked it to show the likelihood of the plaintiff prevailing on the punitive damages claim, rather than merely establishing the potential amount "at stake." *Gonzales*, 840 F.3d at 648. It effectively changed CAFA's amount-in-controversy requirement from possible liability to probable liability. *See Frederick*, 683 F.3d at 1248 (holding that defendant does need to show that punitive damages are "more likely than not," but that they are merely "possible"); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) ("the amount in controversy is not a prospective assessment of a defendant's liability" but the amount potentially "at stake" (quotation marks and citation omitted)).

The district court's approach also raises practical difficulties for the defendant. It invites a defendant to analogize cases that have been tried to verdict to a case at the pleading stage in which discovery has not even begun. For a court or jury to have awarded punitive damages in a fraud case that did not involve any physical injuries (like this one), it is likely that the damaging facts underlying the award were revealed during discovery. *Cf.* Michael Paul Thomas et al.,

Cal. Civ. Prac. Torts § 24:65 (noting the same for products liability actions based on fraud).  But such facts likely will not be apparent at the pleading stage, making it all but impossible to analogize the cases.

To sum up, a defendant that relies on potential punitive damages to satisfy the amount in controversy under CAFA meets that requirement if it shows that the proffered punitive/compensatory damages ratio is reasonably possible. And one way to establish that possibility is to cite a case involving the same or a similar statute in which punitive damages were awarded based on the same or higher ratio.

## II. It was improper for the district court to consider Harley-Davidson's potential statute of limitations defense.

Harley-Davidson also appeals from the district court's apparent decision to adopt Greene's argument that Harley-Davidson's potential statute of limitations defense precludes damages for unnamed class members.

In Greene's remand motion, he argued that only his individual CLRA and fraud claims could be tolled, and that therefore there was only $1,399 of potential punitive damages. The district court did not explicitly address this argument but adopted his $1,399 figure.  *Greene*, 2019 WL 5855982, at *4.   On appeal, Greene again argues that punitive damages are unavailable to the class.  He argues that under *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806–07 (2018) and *Fierro v. Landry's Restaurant Inc*., 32 Cal. App. 5th 276, 292 (2019), only his individual CLRA and fraud claims can be tolled under the *American Pipe* doctrine.

The district court erred in considering the merits of Harley-Davidson's affirmative defense to determine the

amount in controversy. The amount in controversy represents only the "amount at stake in the underlying litigation," not the likely liability. *Gonzales*, 840 F.3d at 648. We have held that the "strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation." *Arias*, 936 F.3d at 928 (emphasis in original). In other words, "just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010).

Greene argues that courts can inquire into potential recovery in assessing the amount in controversy, citing *Pachinger v. MGM Grand Hotel-Las Vegas*, *Inc.*, 802 F.2d 362, 364 (9th Cir. 1986), and *Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113, 1115 (9th Cir. 1983). But in those cases, the underlying statute itself limited the damages available, and there was no need to delve into the merits of the defense or case. In contrast, evaluating a potential statute of limitations defense involves a fact-based analysis of the merits, especially in a case such as this where (1) Greene's allegations involve fraud and concealment and (2) his complaint alleged that all statutes of limitations should be tolled.

In adopting Greene's measure of damages, the district court assumed that Harley-Davidson would prevail on a statute of limitations defense against the rest of the class. The district court improperly "decide[d] the merits of the case before it could determine if it had subject matter jurisdiction." *Geographic Expeditions*, 599 F.3d at 1108. Greene cannot smuggle in merits-based arguments into the "jurisdictional inquiry, which is supposed to be simple and

mechanical." *Keeling*, 660 F.3d at 275. Moreover, doing so would allow Greene to rewrite his complaint to avoid federal court. Greene sued for compensatory damages, punitive damages, and attorneys' fees for a two-year class period, and alleged that all statutes of limitations should be tolled. He sued under laws that allow for punitive damages, exposing Harley-Davidson to higher damages. Harley-Davidson may successfully assert certain defenses, but if the class succeeds in receiving what Greene asked for, Harley-Davidson could pay more than $5 million in damages.

Put simply, Greene put more than $5 million in controversy. Greene is the master of his complaint, and he owns the allegations that have landed him in federal court.[4]

* * * * *

Finally, we briefly address Greene's argument that two of the defendants lack standing because they were non-removing parties. This argument is meritless. A class action "may be removed by any defendant without the consent of co-defendants" under CAFA. *Ibarra*, 775 F.3d at 1195. In addition, all three defendants opposed Greene's motion to

---

[4] Harley-Davidson also included $1,083,333 in attorneys' fees — *i.e.*, 25 percent of the compensatory damages and punitive damages — to meet the $5+ million amount-in-controversy requirement. The district court did not analyze the attorneys' fees portion, and instead assumed it to be acceptable. A defendant does "not need to prove to a legal certainty" that a plaintiff will be awarded the proffered attorneys' fees in the removal notice, *Dart Cherokee*, 574 U.S. at 88 (citing H.R. Rep. No. 112–10, at 16 (2011)), and may "require a chain of reasoning that includes assumptions," *Ibarra,* 775 F.3d. at 1199. Based on Harley-Davidson's evidence that Greene's attorney sought 35 percent in a similar case, it is reasonable to assume that Greene's attorney would seek fees equal to 25 percent of the amount in controversy if he were to prevail.

remand, and were "aggrieved by the decision being appealed," *Hendricks v. Bank of Am.*, *N.A.*, 408 F.3d 1127, 1133 (9th Cir. 2005) (citations omitted).

## CONCLUSION

Harley-Davidson met its burden of showing that the amount in controversy exceeds $5 million under CAFA by establishing that the proffered punitive/compensatory damages ratio is reasonably possible. The district court's decision granting Greene's motion to remand is **REVERSED**.