

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELIZABETH SANFILIPPO, | No. 20-55819 |
| Plaintiff-Appellant, | D.C. No. 2:18-cv-08372-AB-JEM |
| v. | |
| MATCH GROUP LLC, | MEMORANDUM* |
| Defendant-Appellee, | |
| and | |
| DOES, 1 through 20, inclusive, | |
| Defendant. | |

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted August 12, 2021
San Francisco, California

Before: SILER,** CHRISTEN, and FORREST, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\** The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Plaintiff Elizabeth Sanfilippo appeals the district court's order denying her motion to remand to state court and granting defendant's motion to compel arbitration. We review de novo the district court's (1) order denying the motion to remand, *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1047 (9th Cir. 2015); (2) determination that diversity jurisdiction exists, *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016); and (3) order compelling arbitration, *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 917 (9th Cir. 2011). We review the district court's factual findings for clear error. *Gonzales*, 840 F.3d at 648; *Cape Flattery*, 647 F.3d at 917. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the facts, we recite them only as necessary to resolve the appeal.

1.     Sanfilippo argues the district court erred by denying her motion to remand to state court because the district court should have considered Tinder's citizenship. Sanfilippo contends Tinder continued to exist for a period of three years following its merger with Match Group, Inc. and she urges us to adopt a rule that, for diversity purposes, defunct corporations are citizens of their state of incorporation and state of last principal place of business.

Delaware law provides that "[a]ll corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for a

2

term of 3 years from such expiration or dissolution . . . for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them[.]" Del. Code Ann. tit. 8, § 278. But the evidence shows that Tinder neither expired nor otherwise dissolved; it merged into Match Group, Inc. on July 13, 2017. In contrast to an expired or dissolved corporation, following a merger "the separate existence . . . of all such constituent corporations except the one into which the other or others . . . have been merged . . . *shall cease* and the constituent corporations shall . . . be merged into 1 of such corporations." *Id.* § 259 (emphasis added). "[A]ll debts, liabilities, and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." *Id.*

Accordingly, following Tinder's merger with Match Group, Inc., Tinder ceased to exist as a separate entity and all of Tinder's liabilities attached to Match Group, Inc. As part of the merger, Match Group, Inc. assigned all of Tinder's assets and liabilities to Match.com, L.L.C., which subsequently changed its name to Match Group, LLC. Tinder continues to exist solely as an unincorporated division of Match Group, LLC. Because "[a] division of a corporation . . . is not an independent entity for jurisdictional purposes," the district court did not err by

considering only Match Group, LLC's citizenship for purposes of assessing its jurisdiction. *Breitman v. May Co. Cal.*, 37 F.3d 562, 564 (9th Cir. 1994) (citation and internal quotation marks omitted). And because it is uncontested that Match Group, LLC is a citizen of Delaware and Texas, the district court correctly concluded that the parties are diverse.

2. Sanfilippo also contends the district court erred by granting Match Group's motion to compel arbitration for three reasons: (1) the arbitration agreement is unconscionable; (2) the arbitration agreement does not apply retroactively to encompass pre-existing claims; and (3) California law bars retroactive application of the arbitration agreement. We disagree on each score.

To establish unconscionability pursuant to California law, Sanfilippo "must demonstrate procedural and substantive unconscionability, but both 'need not be present in the same degree.'" *Lim v. TForce Logistics, LLC*, — F.4th —, 2021 WL 3557294 at *5 (9th Cir. 2021) (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017)). "Instead, a sliding scale exists such that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Poublon*, 846 F.3d at 1260).

4

In the absence of any indication of oppression or surprise, the adhesive nature of the arbitration agreement in this case "give[s] rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1261–62 (citing *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016)). As for substantive unconscionability, Sanfilippo points only to the fact that Match Group reserved the right to unilaterally modify the terms of the agreement. There is no evidence Match Group *did* unilaterally modify the arbitration agreement, and even assuming the unilateral modification provision is substantively unconscionable, our court has explained that an unconscionable unilateral modification clause in an arbitration agreement does not "make[] the arbitration provision or the contract as a whole unenforceable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016) (citing *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 and n.23 (9th Cir. 2003)). Because the arbitration agreement gives rise to a low degree of procedural unconscionability and Sanfilippo did not establish any substantive unconscionability that infects the arbitration agreement as a whole, the agreement is enforceable.

The arbitration agreement applies to "all claims or controversies arising out of or in connection with [Sanfilippo's] application with, employment with, or termination from, the Company," and the ADR Program explains that Match

Group and Sanfilippo "consent and agree to the resolution by arbitration of all claims or controversies involving or in any way concerning [Sanfilippo's] application with, employment with, or termination from, the Company."  Because Sanfilippo was already employed, the arbitration agreement's reference to claims arising out of or in connection with her application for employment necessarily relates to and establishes an intent to cover claims that had accrued prior to the effective date of the arbitration agreement.  *See Franco v. Greystone Ridge Condo.*, 39 Cal. App. 5th 221, 223 (2019) ("[T]he agreement's reference to claims relating to 'pre-hire' matters expresses an intent to cover all claims, regardless of when they accrued.").  Accordingly, we conclude Sanfilippo's pre-existing claims fell within the scope of the arbitration agreement.  *Cf. AT & T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 650 (1986) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

Sanfilippo relies on *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, (Ct. App. 2013), to argue California law bars Match Group from "unilaterally forc[ing] an accrued employee claim to arbitration."  In *Avery*, the court "den[ied] motions to compel arbitration because the moving party failed to

6

establish the plaintiff employees agreed to the specific arbitration agreement the employer submitted to the trial court." *Franco*, 39 Cal. App. 5th at 231. The California Court of Appeal's "analysis of the retroactive application of [the] arbitration agreement to preexisting claims was in the context of the employer's attempt to enforce an arbitration agreement that it had unilaterally modified to apply to preexisting claims." *Id.* Thus, "*in the context of unilateral modification of an arbitration agreement*, the implied covenant of good faith and fair dealing requires an employer to provide reasonable and express notice to employees regarding the applicability of such modifications to already existing claims." *Id.* at 232. Unlike *Avery*, there is no dispute Sanfilippo agreed to the arbitration agreement, nor is there any suggestion Match Group unilaterally modified the agreement at any time. Instead, Match Group simply seeks to enforce the contract as originally written.

**AFFIRMED.**